JUNE 1821.

Creager
vs
Brengle

---

## COURT OF APPEALS, JUNE TERM, 1821.

### CREAGER vs. BRENGLE.

The *cestui que use* of judgments against a principal debtor and his surety, on receiving payment from the latter, can make no such assignment in the surety's favour as is provided for by the act of 1763, ch 23 ·

That act contemplates on'y assignments by *legal plaintiff's*

Whether an assignee of a judgment, under the before mentioned act, can proceed against the special bail of the defendant—*Quere*

A surety, on paying a judgment debt of his principal, may in equity compel the creditor to assign the judgment, with all the liens given by the principal to secure it

At common law, if a surety in a bond, whether joint or several, pays the creditor the principal, he may, in an action against him by the creditor, plead such payment in bar

So, if such payment be made after judgments on the bond, and the creditor then proceeds against the bail of the principal, the bail can discharg· himself by pleading the payment

Although a court of equity will compel an assignment of a judgment against a principal debtor, which has been satisfied· y the surety, it will not authorise the surety to proceed against the special bail of the principal, unless such bail is *absolutely fixed* at the time of the assignment . .

APPEAL from the Court of Chancery. The bill states that *George Creager,* senior, being indebted to *Thomas Burke,* in $1000, on the 1st of May, 1808, executed, with *Brengle,* the complainant, (now appellee,) as his surety, a joint and several bond in *Burke's* favour; that the interest was paid thereon to the 10th April 1810, and that the complainant had himself paid $300 of the principal debt. That afterwards the bond came into the hands of *John Gebhart,* who instituted separate suits against the obligors, in *Burke's* name, for his use, and obtained judgments for the balance due, &c. The bill further states, that the complainant often applied to *Creager* to pay the bond, or indemnify him as his surety, and that he refused to do either, and a short time before the judgment, removed to *Columbia,* and applied to the legislature of this state for the benefit of an act of insolvency, which was refused; that a certain *Henry Cronice* was special bail for *Creager* in said suit; that a *capias ad satisfaciendum* was issued

June 1821.

Creager
vs
Brengle

:against *Creager*, on said judgment, to enable the plaintiff to proceed against the bail; and that the defendant, *George Creager*, junior, (the appellant,) in order to defraud the complainant, and combining with his father, applied to *Gebhart*, stating that he had funds of his father's to satisfy the judgment, and proposed to pay it, but that *Gebhart*, finding him only disposed to pay the balance remaining after deducting what had been paid by the complainant, requested that the complainant might be sent for, to which the defendant objected. *Gebhart* then received the money, and the defendant, instead of taking a receipt, took from *Gebhart* an order to the clerk to have the judgments entered for his, the defendant's, use. The bill further alleges, that the defendant undertakes to regulate the judgments, and holds the complainant answerable, which the complainant charges to be done in collusion with his, the defendant's, father, and to prevent the bail from bringing him into court to commit him, which would have been done, but the defendant represented to the bail, that he need not surrender him, and entered into an agreement to indemnify the bail. That the complainant tendered the whole amount of the sum paid on the judgments to the defendant, he giving him the right to proceed against the defendant's father, and the bail, which the defendant refused, and will not suffer a *scire facias* to issue against the bail. Prays relief and an injunction, &c. The answer of the defendant admits that *Creager*, the father, and the complainant, executed the bond stated in the bill—that it came to *Gebhart*, and that suits were instituted thereon, &c. and that the father, being unable to pay, a *ca. sa*, was issued; that the defendant called on *Gebhart* and paid the money, and had the judgments entered for his use, and that the money was paid in purchase of the judgments, and not in discharge of them; that the father had paid $120 for two years interest, and the complainant had also paid $300; that a statement was made, leaving a balance of $814 88, which was paid by the defendant to *Gebhart*. It denies that the $300 was paid as *principal*, but on the judgments generally, or that any representation was made to *Gebhart* that the money was had of his father, and that it was paid without the father's presence or knowledge, being borrowed by the defendant from the branch bank at *Frederick* town. It also alleges the defendant's entire owner-

June 1821. ship of the judgments, and admits that he has released the
bail, and indemnified him. It also admits, that the defen-
dant refused to receive the money tendered by the com-
plainant, with leave for the complainant to proceed against
the bail. It denies fraud, &c. The answer of *Creager,*
the father, denies that he ever furnished the money, and
states that he did not know that it was paid until April
20th, 1812.

Creager
vs
Brengle.

On a motion to dissolve the injunction,

KILTY, Chancellor. There is in the answer of *George
Creager,* junior, a denial of the fraud and combination as
charged, and of the money being furnished by *George Crea-
ger,* senior; but there appears in the whole transaction a
design to oppress and injure the complainant. The relief
which is given by the son to the father is proposed to be at
*Brengle's* expense, and the bail is not only indemnified,
but secured from his liability, by the conduct of *George
Creager,* junior, as avowed in his answer. By the act of
1763, *ch.* 23, a surety, who satisfies the judgment, is entit-
led to an assignment of it, and to proceed against the prin-
cipal debtor by execution, which might probably include a
proceeding against the bail. But *George Creager,* junior,
admits that he refused to give such an assignment, unless
the bail was exonerated. In this view of the case, the
chancellor is not disposed to dissolve the injunction, un-
less he can be satisfied that he is bound so to do. The mo-
tion will therefore stand continued till July term next,
when the effect of the want of the legal party may be con-
sidered, viz. whether *Gebhart,* the legal plaintiff at law,
ought not to have been made a party in this case.

At the next term, the chancellor dissolved the injuncti-
on, not being satisfied that he would be justifiable in conti-
nuing it against the answer of the defendants, and leaving
the complainant to procure the assignment of the judgment
as the law may authorise. Commissions issued, and testi-
mony was taken and returned. The cause was argued and
submitted.

KILTY, Chancellor. My present impression is, that the
last part of the order for the injunction, which related to
the *scire facias,* [viz. "The chancellor is not satisfied that
the injunction ought to be issued, as prayed, respecting the

*scire facias,"*] was grounded on the belief that the county court might interfere to have the *scire facias* issued. If the injunction had not been dissolved, and the complainant was thought entitled to relief, the decree would have been for making it perpetual. At present, if the money has been paid, as is suggested, it would be for a repayment. No opinion is given as to the amount of the evidence, or whether the complainant is entitled to relief, but it may be necessary, according to the practice, to have the payment stated in a supplementary bill or petition, and the relief prayed accordingly.

The complainant then filed a supplementary bill against *George Creager*, junior, alone, in which he stated, among other things, that on the 7th of September 1814, he paid to *George Creager*, junior, the whole of the money due on the judgment heretofore made an exhibit in the original bill. Prayer for a decree, that the money be repaid, &c. After which the death of *George Creager*, senior, was suggested. The answer of *George Creager*, junior, admits the receipt of the money mentioned in the supplementary bill—that *George Creager*, senior, is dead, intestate, and left three infant children, and the suit as to him is abated, and should be revived against his representatives, &c.

KILTY, Chancellor. (December Term, 1818.) This cause standing ready for hearing, has been argued by counsel on each side, since which the proceedings have been considered. I am of opinion, that the fraudulent conduct of the defendant, *George Creager*, junior, is sufficiently established by the testimony, to entitle the complainant to the relief prayed. This relief became necessarily varied under the supplemental bill, and the receipt for the money given to the complainant was admitted by the counsel in writing. The proper mode of relief is therefore a decree for the repayment of the money, with interest—*Decreed*, that the defendant shall forthwith bring into this court, to be paid to the complainant, or shall pay to the complainant, the sum of $934 58, with interest from the 7th of September 1814, to the time of payment, &c. together with the costs of suit. From this decree the present appeal was prosecuted.

The cause was argued before CHASE, Ch. J. BUCHANAN, EARLE, JOHNSON, MARTIN, and DORSEY, J.

June  1821.  *Pinkney, Taney* and *Schley*, for the appellant, cited the
act of 1763, *ch.* 23.   2 *Madd. Chan.* 408.   *Parsons &*
*Cole vs. Briddock*, 2 *Vern.* 608.   1 *Madd. Chan.* 350.
*Greenaway vs. Adams*, 12 *Ves.* 395.   *Gwillim vs. Stone,*
14 *Ves.* 128; and *Craythorne vs. Swinburne*, 14 *Ves.* 167.

Creager
vs
Brengle

 *R. Johnson*, for the appellee, relied on *Davis vs. Simp*-
*son, et al. ante* 147. *Wright vs. Morley*, 11 *Ves.* 22.  *Ex-*
*parte Peachy*, 1 *Atk.* 133.  *Cheesebrough vs. Millard,*
1 *Johns. Chan. Rep.* 412.  *Rees vs. Berrington*, 2 *Ves.*
jr. 542; and *Hilleary vs. Crow*, 1 *Harr. & Johns.* 542.

 Dorsey, J. delivered the opinion of the court.   In ex-
amining the decree of the chancellor, the first inquiry
which must engage the attention of the court is this—Was
the money paid by *George Creager*, junior, to *Gebhart*, the
menoy of *George Creager*, senior, or was it the money of
the former, and paid by him in purchase of the judgments?
The complainant in his bill charges that the money was fur-
nished by the elder *Creager*, and paid by *Creager*, junior,
to *Gebhart*, in satisfaction of the judgments.  *Creager*, the
younger, in his answer swears, that no part of the money
was furnished by *Creager*, senior, that he borrowed the
same from the *Frederick* Town Branch Bank, and that the
payment was made by him to *Gebhart* in the absence, and
without the knowledge of *Creager*, senior, in purchase of
the judgments, and not in discharge or satisfaction thereof.
*Creager*, senior, in his answer, most explicitly denies that
he furnished the money, or had any agency in borrowing
the same, or in its subsequent application; and the answers
of both these defendants, in relation to this point, are sup-
ported by *Lewis Creager*, who proves that the money paid
to *Gebhart* belonged to *Creager*, junior, and was raised on
paper discounted for his use at the *Frederick* bank, and
this witness, on his cross examination, states the motives
which induced *Creager*, junior, to purchase the judgments.
The answers of *Creager*, senior, and *Creager*, junior, when
considered in connexion with the testimony of *Lewis Crea-*
*ger*, furnish, in the opinion of the court, a mass of testi-
mony, which must be considered as conclusive.   To be
sure *Gebhart* swears that it was his impression, at the time
of receiving the money, that *Creager*, junior, meant to dis-
charge the judgment, but he does not disclose the grounds
of his impression, and it is most evident that the circum-

stance of *Creager*, junior, requiring an assignment of the judgment, when he paid the money, was calculated to create an impression, the very reverse of that which was made on the mind of *Gebhart*; and the impatience manifested by *Creager*, junior, to procure the assignment, before the complainant could be present, was perfectly consistent with the fact of his being a purchaser, and is fairly referrible to the apprehension that the complainant would endeavour, if present, to prevent *Gebhart* from making the assignment. The other testimony offered by the complainant on this point, is considered by the court as inconclusive, and at best only calculated to create slight suspicions, which cannot prevail against the unambiguous answers of the defendants, supported as they are by the positive testimony of *Lewis Creager*. It is clear, therefore, that the decree of the chancellor cannot be supported on the ground that the money paid to *Gebhart* was paid in discharge of the judgments.

We proceed to inquire, whether there is any other foundation on which the decree can be sustained? It has been urged by the complainant's counsel, that the complainant, on tendering to *Creager*, junior, the amount of the judgments, was entitled to an assignment of the judgment against *Creager*, senior, with liberty to proceed against his bail, and that as *Creager*, junior, refused to assign the judgment, unless the complainant would engage not to pursue the bail, the receipt of the money due on the judgments by *Creager*, junior, was against conscience, and that therefore a court of equity would be well warranted in decreeing a repayment thereof. It must be observed, that the act of 1763, ch. 23, cannot be brought in aid of this position. That act provides, "that where any person or persons shall recover judgment against the principal debtor and surety, and such judgment shall be satisfied by the surety, that the creditor shall be obliged to assign such judgment to the surety satisfying the same, and that the assignee shall be entitled unto, and have in his own name, as assignee, the same execution against the principal debtor, in virtue of such assignment and this act, as the creditor might or ought to have had, the said assignment being first recorded in the said court wherein the judgment shall have been rendered or obtained." From the language and provisions of this act, it is evident that the legislature contemplated an assignment of

June 1821.

Creager
vs
Brengle

June 1821. the judgment by the legal plaintiff. The act uses the expres-
sions, creditor and original debtor, and provides that the
assignee shall, in virtue of the assignment, have an execu-
tion in his own name against the principal; now, if a *cestui
que use* was obliged, under this act, to assign the judgment
to the surety, on his paying the same, the assignee would be
entitled to sue out an execution in his own name, when his
assignor would have been obliged, if he had not assigned,
to have enforced the judgment in the name of his trustee,
to wit, the legal plaintiff, a construction which produces
such an anomaly ought not to be given to the act, and it
would be an anomaly indeed to hold, that an assignee of a
judgment should have a legal remedy in his own name,
when the person under whom he claims, and to whose
rights he is substituted by assignment, had no such reme-
dy.   Whether a surety who had paid the amount of a judg-
ment, and has received from the legal plaintiff a statutory
assignment, can proceed against the bail of the principal,
on a *ca. sa.* being returned *non est*, or whether such bail
could, on the plea of payment, defend himself on the ground
that the payment made by the surety operates as a pay-
ment by the principal, so far as respects the bail, are ques-
tions which it is not necessary to decide in this cause.

The next enquiry is, whether on principles of equity,
the complainant had a right to demand from *Creager*, ju-
nior, an assignment of the judgment against *Creager*, se-
nior, on his paying or tendering to him the amount of the
judgment?   On this point the court have no doubt.   It is
a well established principle of equity, that the surety on
paying the debt of the principal debtor, has a right in a
court of chancery to call on the creditor for an assignment
of the judgment, and all liens which the principal has giv-
en to the creditor.   But whether the bail of the principal
could not plead the payment made by the surety, in virtue
of which he obtains the assignment, as a payment by the
principal, or whether a court of equity, which decrees the
assignment, would not enjoin the surety from proceeding
against the bail, are questions entirely distinct from the
right of the surety to claim an assignment of the judgment
against the principal.   On principles of common law, and
independently of any statutory provision, we hold it to be
clear, that if a surety in a bond, whether the same be joint
or several, pays the amount to the creditor, the principal

may, on a suit instituted against him by the creditor, rely
on such payment as a bar to the suit—So also, if the surety
pays the amount of the debt after judgments are obtained
against him and the principal, and the creditor should proceed
against the bail of the principal, the bail might discharge
himself by pleading the payment, and giving in evidence
the payment made by the surety. The creditor, although
he has different securities, is entitled to but one satisfaction,
and the payment by the surety would operate as an extin-
guishment of the creditor's right to charge the bail, other-
wise the surety in the foregoing cases would not be able to
maintain an action against the principal for money paid,
laid out and expended for his use. Such at common law
is the legal effect of a payment made by the surety in eve-
ry case where the principal, or his bail, have an opportuni-
ty of pleading such defence in bar of the action, or *scire
facias*, as the case may be. But if we should admit that
the bail of the principal could not at law avail himself, by
way of defence, of a payment made by the surety, and in
virtue of which the court of chancery had decreed an as-
signment of the judgment against the principal, still we
think that the chancellor would enjoin all proceedings-
against the bail. What equity has the surety, who became
bound with his principal, to look to the bail of the latter,
and who were not fixed at the date of the assignment, for
his indemnity? Their engagements were not contempora-
neous, or of the same nature. The undertaking of the
surety was long prior in point of time to that of the bail,
and the extent and nature of their obligations were essen-
tially different. The surety stipulated absolutely and un-
conditionally for the payment of the money; and the debt
which he engaged to pay, with reference to the creditor,
was his own debt. The engagement of the bail was con-
tingent; he undertook that the principal would, if a judg-
ment was rendered against him, either pay the amount there-
of, or surrender himself to prison. This engagement, there-
fore, could be gratified by the performance of a collateral
act unconnected with the discharge of the creditor's claim
—nay, the undertaking of the bail became inoperative in
the event of the death of the principal before the return of
a *ca. sa.* The engagements, therefore, of the surety and
bail were not *ad idem.* The surety, when he became
bound for the principal, looked to him, and such fixed se-

June 1821.

Creager
vs
Brengle

JUNE 1821.

*Creager*
*vs*
*Brengle*

curities as he had given to the creditor, for his indemnity; and to permit him to proceed against the bail, who were not fixed at the time of the assignment, would be contrary to the first principles of justice. If the surety had this right, it would necessarily follow that the creditor could, at no stage of the proceedings after the bail piece was filed, enter an *exoneretur* against the consent of the surety. The latter might address the creditor in this language—"Upon paying the debt for which I was bound as surety, I am entitled to the benefit of all securities, whether absolute or contingent, which the principal had given to you, and as you have released the bail, you have impaired my security, and thereby discharged me from my engagement." But the power of the creditor to release the bail of the principal before judgment, has never been questioned. We may safely say, a judicial doubt has never been breathed on the subject. The case of *Parsons & Cole vs. Briddock*, cited from 2 *Vernon*, 608, does not apply. The principal had given bail in an action—Judgment was recovered against the bail—afterwards the surety was called upon and paid, and it was held, that he was entitled to an assignment of the judgment against the bail. It will be borne in mind, that a judgment in the foregoing case was obtained against the bail before the surety paid the debt of the principal, the contingent engagement of the bail had passed in *rem judicatam*, and the bail as a debtor, stood in the place of the principal, and therefore, as the bail came in the room of the principal debtor as respected the creditor, they likewise came in the room of the principal debtor as respected the surety. And although this case has pushed the doctrine of substitution to its utmost verge, it affords no principle by which the claim of the complainant in this case can be supported. As the bail, therefore, of *Creager*, senior, could not have been made liable, if an unqualified assignment had been made by *Creager*, junior, to the complainant, we think that the latter ought to have received the assignment which the former was willing to give. For these reasons we think that *Creager*, junior, could conscientiously retain the money paid to him by the complainant.

CHASE, Ch. J. The case now before the court is, that *George Creager*, senior, with *Lawrence Brengle* his secu-

rity, executed a joint and several bond on the 1st May 1808,
to *Thomas Burke*, for $1000. The bond, by an equita-
ble assignment, came into the hands of *John Gebhart*, who
instituted separate suits against both obligors, in *Burk's*
name, for his use, and obtained judgments for the balance
due. The judgment against *Brengle* to be released on pay-
ment of the judgment against *Creager*, and costs.

By the act of 1763, *ch.* 23, *s.* 8, if a surety pays the
money due on the judgment, the judgment creditor shall be
obliged to assign the judgment to the surety satisfying the
same, and the assignee shall have in his own name the
same execution against the principal debtor by virtue of
such assignment, and this act, as the creditor might have
had, the said assignment being first recorded in the same
court.

No person could be, or was entitled to, a legal assign-
ment of the judgment but *Brengle*, the surety. No per-
son could give a legal assignment but *Thomas Burke*, in
whose name the judgment was obtained for the use of *Geb-
hart*. *Gebhart* had sold his equitable interest to *Creager*,
junior, who had it entered on the docket, by the order of
*Gebhart*, for *Creager's* use. The money paid by *Creager*
to *Gebhart* was obtained from the bank of *Frederick*, and
was not the money of his father. *Creager*, junior, having
purchased the equitable interest of *Gebhart*, had the full
control over it, and might dispose of it in what way he
pleased; he might release the bail, and proceed against the
original defendant, or he might retain full power over it,
and suffer it to remain as it was. The surety, *Brengle*,
had no right to interfere until he got a legal assignment of
the judgment from the judgment creditor, and no attempt
has been made to obtain such assignment of the judgment.
As it appears to me, *Brengle*, the surety, had no right to
call on *Creager*, junior, for the assignment of his equitable
right; and if he did, it was at the option of *Creager* to re-
fuse or comply on such terms he might think proper to pre-
scribe. His refusal or compliance, on certain terms, could
be no fraud or injury to *Brengle*. On the proof in the
case, *Creager*, junior, was a *bona fide* purchaser, with his
own money, of the equitable interest, and nothing appears
to impeach his title. The motives which induced him to
come forward are no ingredients of fraud, nor do they di-
minish or impair his right to the money. The bail was not

fixed, and could not be fixed, until all the legal steps were pursued, and a judgment obtained against the bail.

As it appears to me, *Brengle*, the surety, had only one course to pursue to obtain the money he had paid for the principal debtor; that was, the using the proper means to obtain a legal assignment from the judgment creditor. If a legal assignment had been obtained, under the act of 1763, from the judgment creditor, the assignee would have been clothed with all the right of such creditor—would have stood in his shoes, and could, in his own name, have proceeded to fix the bail, by suing out a *co. sa.* against the principal, &c. This, in my opinion, is the plain and fair exposition of the act of 1763, and will place the surety, where it was intended he should stand, in the shoes of the judgment creditor. This construction gives the assignee all the rights of the judgment creditor for his indemnification, which accords with the intention of the act, and does not increase the responsibility, or change the liability of the bail. It is conceded that the equitable assignee can, in the name of the assignor, take every step, and issue all process, necessary for fixing the bail, and subjecting him to the payment of the money; and what good reason can be suggested why the legal assignee should not, in a court of law, enjoy the same rights? The right to issue execution against the original debtor is expressly given, and the right to proceed against the bail is an incident growing out of the right to issue execution against the debtor, and results from it; and why not? It does not augment the liability of the bail, or change his condition in any respect. If, according to a confined and literal interpretation of the act of 1763, the legal assignee could not pursue the bail to indemnify himself, it would be better to accept of an equitable assignment, because the equitable assignee, by pursuing the bail in the name of the assignor, and obtaining a judgment against him, would render him liable to the payment of the debt.

I do suppose, independent of the act of assembly, the surety who paid the money due on the judgment could have no right to demand an assignment of the judgment; all that he could require was a receipt, or release, which would entitle the surety to demand a repayment of the same as so much money paid and expended for his use.

I am of opinion there has been no fraud or collusion in this case, and that the decree of the chancellor ought to be reversed.

DECREE REVERSED.