HOLLINGSWORTH's Adm'x. *vs.* FLOYD, *et al.*—June 1827.

J and W passed a joint and several obligation to T, who obtained several judgments against them, which were each superseded by them, with H and E as their sureties. After the judgments had been thus superseded, W paid a considerable part of the debt, and by an arrangement with the plaintiff's counsel, issued, for his use, a *fieri facias* on the confessions entered into by way of *supersedeas* of the judgment against J and his superseders. The *fieri facias* was laid on the property of J, which was sold by the sheriff—*Held,* that the county court erred in quashing that execution, which, as to the balance due the original plaintiff, was correctly issued; though so far as it concerned W's interest, even considering him the surety of J, that court was correct.

Payments by sureties are highly favoured by our laws, and have been most liberally dealt with by the courts.

By the act of 1763, *ch.* 23, a payment in full, entitles a surety to an assignment of the judgment against the principal.

Upon established principles of equity, a surety has a right to call on a creditor for an assignment of the judgment, and all liens which the principal has given to the creditor.

A payment in full by a surety has been adjudged of itself, to operate as an assignment, so as to enable him to use the name of the creditor to recover the money from his principal.

A payment of part of a debt by a surety, does not entitle him to an assignment of the creditor's securities *pro tanto.*

APPEAL from *Saint Mary's* County Court.   It appears that a writ of *fieri facias* issued out of that court on the 12th of August 1822, on a confession of judgment, by way of *supersedeas*, entered into on the 1st of May 1820, by the defendants, to stay execution on a judgment rendered at March term 1820, in the name of the plaintiff, against *Joseph P. Floyd*—which *fieri facias* was endorsed for the use of *William Floyd*, and made returnable to March term 1823.   The sheriff returned the *fieri facias* "levied as per schedule, and sold to *William Floyd*, September 25th, 1822, for $580."   The schedule referred to was of the following lands taken as the property of *Joseph P. Floyd*, one of the defendants, viz.   "One fourth part of *Prevention*, 86 acres, is 22 acres.   One fourth part of *Wolfpit Levels*, 80 do. is 20 do.   One fourth part of *Jenkins's Neck*,, 87 do. is 22¼ do.   One fourth part of *Cuthbert's Pasture*, 200 do. 50 do.   One fourth part of part of *Beaverdam*, 10½ do. is 2⅔ do.   One fourth part of the *Water Mill*," &c.   The whole appraised to $383 95½.   Motion was made by the defendants to quash the *fieri facias* and return, &c. and a rule was laid on the plaintiff to show cause, &c.

The defendants, in support of the motion and rule, produced a record of the judgment rendered at March term 1820, by the plaintiff, for the use of *William Floyd*, against *Joseph P. Floyd*, and a confession of judgment entered into on the 1st of May 1820, by the said *Floyd* with *Henry Abell* and *Edward Spalding, junior*, for staying execution of the above judgment, &c. Also a record of a judgment rendered at March term 1820, by the plaintiff against *William Floyd*, upon a bond entered into by *Joseph P. Floyd* and *William Floyd*, jointly and severally, on the 15th of June 1813, to *T. Hollingsworth*, deceased, being the same cause of action, and the judgment rendered for the same amount of debt as mentioned in the record of the judgment against *Joseph P. Floyd*.   The judgment against *William Floyd* was also superseded by him, with *Henry Abell* and *Edward Spalding*, Jr. on the 1st of May 1820.   The defendants then swore as a witness *Gerard N. Causin*, who stated that a part of the money, upwards of $1000, mentioned in the said writing obligatory, on which several judgments had

been obtained against the defendant and *William Floyd,* had been paid to him as counsel for the plaintiff by the said *William,* after the rendition of said judgments. That at the time the money was paid by the said *William,* as aforesaid, he alleged that he was only security in the said writing obligatory; and it was then understood and agreed between the said *William,* and the witness, as counsel for the said plaintiff, that the said judgment against the said defendant *(Joseph P. Floyd,)* should be entered for the use of the said *William;* which agreement was carried into effect by the witness as counsel of the said plaintiff. To the admissibility of which testimony the plaintiff objected; but the Court, [*Stephen,* Ch. J. and *Key* and *Plater,* A. J.] overruled the objection, and received the, said testimony, and ordered the said execution to be quashed. The plaintiff excepted; and the writ of *fieri facias* and return being quashed, the plaintiff appealed to this court.

The case was argued before BUCHANAN, Ch. J. and EARLE, and MARTIN, J.

*Magruder,* for the Appellant, contended, that no sufficient reason was shown for the judgment of the court below. He referred to *Berry, use of Burgess, vs Nicholls,* 2 *Harr. & Johns.* 508. *Merryman, et al. vs The State at the inst. of Harris,* 5 *Harr. & Johns.* 423.

*C. Dorsey,* for the Appellees, cited *Sotheren's Lessee vs Reed,* 4 *Harr. & Johns.* 305. *Norwood vs Norwood,* 2 *Harr. & Johns.* 238. 1 *Wheat. Selw. N. P.* 425. 1 *Inst.* 232, *a.*

EARLE, J. delivered the opinion of the court. The appeal is taken in this case from a judgment of *Saint Mary's* county court, on a motion to set aside an execution. The testimony produced by the defendants, in support of the motion, is drawn up in the form of a bill of exceptions, and is signed by the judges. From this, and the record, it appears that *Joseph P. Floyd* and *William Floyd,* passed a joint and several obligation to *T. Hollingsworth* for $1061 25, with interest; that suits were brought on this obligation against them separately, and prosecuted to judgments; that each of those judgments were by them superseded, and that *Henry Abell* and *Edward*

*Spalding, Junr.* were superseders for both of them; that after the *supersedeas* judgments were entered into, *William Floyd* paid upwards of $1000 of the debt, and by an arrangement with the plaintiff's counsel, issued for his use, a *fieri facias* on the *supersedeas* judgment of *Joseph P. Floyd*, against him and his superseders, telling the counsel, who was a witness for *Joseph P. Floyd*, that he was surety in the obligation to *T. Hollingsworth*, and wished reimbursement; and it appears that the *fieri facias* was laid on the property of *Joseph P. Floyd*, which was sold by the sheriff, and purchased in by *William Floyd*. The *fieri facias*, thus executed, was quashed by the court; and the plaintiff having excepted, now claims to have the judgment reversed by us. And were the court below wrong in ordering the *fieri facias* to be quashed? is the question to be determined.

By the arrangement between *William Floyd*, and the counsel of *Ann Hollingsworth*, administratrix of *T. Hollingsworth*, it would seem as if the process was issued for the benefit of both of them. Although the payment made was a handsome one, it was but a partial payment, and left a balance due to *Ann Hollingsworth*, which it cannot be supposed her counsel intended to transfer to another, even if he had the power to do so. As to this balance then, the court were decidedly in error, in ordering the *fieri facias* to be quashed. And it remains to be inquired, whether they were right as far as the interest of *William Floyd* was concerned? The information of the situation of *William Floyd* in relation to the bond, is derived from himself, but it is made testimony by the examination of the adverse party, and he will be considered by us as surety of *Joseph P. Floyd*, in our farther examination into this subject. Payments by sureties are highly favoured by our laws, and have been most liberally dealt with by this court. A payment in full entitles a surety to an assignment of the judgment against the principal, by the act of 1763, *ch.* 23. Upon established principles of equity, he has a right, in a court of chancery, to call on a creditor for an assignment of the judgment, and all liens which the principal has given to the creditor; and by several decisions in this court, a full payment by a surety has been adjudged of itself to operate as an assignment, so as to enable

him to use the name of the creditor, to recover the money of his principal. The cases of *Norwood vs Norwood, Sotheren vs Reid,* and *Merryman and others, vs The State, at the instance of Harris, use of Murray,* were adjudicated on this principle. The several debts referred to by them, were considered as assigned by the mere operation of law, to effectuate the purposes of justice between the parties, and accordingly executions were issued, and recoveries had, in the name of the creditors, for the use of the sureties, against the principals. The same principle would be applied to the case before us, if there were not one or two distinguishing marks of difference between it, and the cases thus decided. The payment of the entire debt was not made by *William Floyd,* and the proceeding is upon the *supersedeas* judgment of *Joseph P. Floyd,* and not on the judgment confessed by him to the administratrix of *T. Hollingsworth.* It would not subserve the ends of justice to consider the assignment of an entire debt to a surety as effected by operation of law, where he had paid but a part of it, and still owed a balance to the creditor; and this court would not countenance such an anomaly as a *pro tanto* assignment, the effects of which could only be to give distinct interests in the same debt to both creditor and surety. We must then entertain the opinion, that the court were right in quashing the execution so far as *William Floyd's* interest in the debt was concerned. The process was moreover issued upon the *supersedeas* judgment against *Joseph P. Floyd,* and his superseders, *Henry Abell* and *Edward Spalding, Junr.* on whom *William Floyd* in justice could have no claim. If he had satisfied the whole debt, we should have said he was entitled equitably to an assignment of the judgment against his principal, and all liens which the principal had given to the creditor; but beyond this we should have been indisposed to have gone. We could not have rendered other persons liable to *William Floyd,* whose responsibility was in no sort contemplated, when he entered surety for his principal. *Abell* and *Spalding* indeed became superseders to *William Floyd* himself, on the judgment rendered against him, at the same time they entered into this engagement for *Joseph P. Floyd;* and thus it appears they rightly considered both judgments for the same debt, and doubtlessly looked for

indemnity against loss, as well to *William Floyd* as to *Joseph P. Floyd.*

The execution, however, having been quashed to the prejudice of the rights of *Ann Hollingsworth*, administratrix of *T. Hollingsworth*, the judgment must be reversed.

JUDGMENT REVERSED.