GEORGE H. WILLIAMS, for Complainants.
LEVIN GALE, for Defendant.

---

THE NEPTUNE INSURANCE COMPANY,
vs.                                    } DECEMBER TERM, 1850.
REBECCA DORSEY.

[RIGHT OF SURETY TO SUBSTITUTION—TRUSTEES' COMMISSION.]

---

A MORTGAGE was assigned, and the equity of redemption conveyed by the mortgagor to D., who created liens upon the property by way of mortgage, and then executed and passed his promissory notes for the interest due on the original mortgage to the assignee thereof, with S. as endorser. These notes were paid at maturity by S., but no assignment of the mortgage was ever made to him, and the property was afterwards sold. HELD, that S. could not be subrogated to the rights of the original mortgagee as to the amount so paid by him.

If by the payment of the money by S. an assignment *pro tanto* was effected by operation of law, he would, to all purposes and every effect, have been placed upon a footing of equality with the original mortgagee, and equally entitled with him to participate in the common security.

The Act of 1763, ch. 23, only confers the right to make the assignment authorized by it, upon the original creditor, and not upon the assignee of such creditor.

It is a clearly established principle in this State, that a surety, on paying the debt of the principal, has a right in a Court of Equity, to call upon the creditor for an assignment of the claim against the principal, and all liens which he has given the creditor.

But a surety can neither at law nor in equity call for such assignment, or

be clothed by mere operation of law and upon principles of equity with the rights of an assignee, unless he has paid the *entire debt* of the creditor: a *pro tanto* assignment will not be allowed.

The trustees for the sale of mortgaged property postponed the sale, at the request of the owner of the equity of redemption, who stipulated that they should be allowed commissions and expenses for such postponed sale. —HELD, that this was a *personal* contract with the party, and gave the trustees no right to claim such commission out of the proceeds of sale.

[The facts of the case are fully stated in the Chancellor's opinion.]

THE CHANCELLOR:

The principal question in this case, which is brought before the Court upon exceptions to the report of the Auditor, relates to the right of claim No. 12 to be substituted to the amount thereof in the place of No. 1, which appears to be a prior lien upon the proceeds of the property sold under the decree of this Court.

Claim No. 1 is founded upon the mortgage of the property in question, by Rebecca Dorsey to the Neptune Insurance Company, bearing date on the 15th of April, 1843, to secure payment of the sum of $8,000, and which, by the assignment of the mortgagee, has become the property of the Baltimore Life Insurance Company. The proceedings show that after the execution of this mortgage, to wit: on the 15th of February, 1844, Rebecca Dorsey, the mortgagor, for the consideration of five dollars, conveyed by deed to Edward H. Dorsey, her equity of redemption in the mortgaged premises, subject to the mortgage debt; and that on the 9th of March, of the same year, Edward H. Dorsey and his wife conveyed the same property to John Patterson, to secure the payment of the sum of $3,574 28, due by him to Patterson, on a promissory note dated on the day of the date of the mortgage, payable in five years, and for the interest on said sum, for which interest notes were also executed. This mortgage, upon its face, was made subject to the preceding mortgage given by Rebecca Dorsey to the Neptune Insurance Company. The mortgage to Patterson

was subsequently assigned in part to John Glenn ; and the claims of Mr. Glenn and Mr. Patterson, formed therein, are designated in the report of the Auditor as claims Nos. 4 and 5.

It also appears that on the 9th of May, 1844, Edward H. Dorsey, the assignee of the equity of redemption of Rebecca Dorsey, and the mortgagor in the mortgage to Patterson, passed to the Baltimore Life Insurance Company, the assignee of the Neptune Insurance Company, his three promissory notes endorsed by James Swann, for $443 55, payable respectively at ninety days, six months, and one year, and being for the amount of interest due on the mortgage, to the 9th of May, 1845. That these notes were, at maturity, paid to the Life Insurance Company by said Swann, and the amount thereof, with interest, having been repaid to Mr. Swann by David Stewart, Esq., one of the trustees for the sale of the property under the decree of this Court, the claim in question, designated as No. 12, has been stated by the Auditor as due him.

The fact that these notes were given to the Baltimore Life Insurance Company, on account of interest due on the mortgage of Rebecca Dorsey to the Neptune Insurance Company, and that they were at their maturity paid by Mr. Swann to the Baltimore Life Insurance Company, the assignee of the said mortgage, and that the money has since been repaid to Mr. Swann by Mr. Stewart, appears by the depositions of Mr. Swann, and Mr. Donaldson, the President of the Insurance Company, and I state these as facts in the cause, upon the assumption that the depositions are admissible in evidence, though the competency of Mr. Swann as a witness is excepted to.

But assuming the facts to be established by competent testimony, the question arises whether Mr. Swann or Mr. Stewart, who has paid him the claim, can, to the extent of the sum so paid, be permitted to stand in the place of the prior mortgagee, and be subrogated to his rights ?

No assignment, in fact, was made by the Baltimore Life Insurance Company to Mr. Swann, upon the payment of the money by him or since, and if he is entitled to occupy the

position of an assignee *pro tanto*, it must be by operation of law merely, or upon principles of equity established to effectuate the purposes of justice. But if, upon paying this money, Mr. Swann became, upon principles of equity, subrogated to the rights of the Insurance Company for the amount so paid, he must for all purposes, and to every effect, have been placed upon a footing of equality with the Company, and in case the mortgaged premises had not sold for enough to pay the entire mortgage debt, the loss would have fallen in proportion upon the Company and Mr. Swann. The argument is, that upon paying this money, Swann, upon general principles of equity, and independent of the statutory provisions upon the subject, became entitled to an assignment of the security *pro tanto*, and to be substituted to the rights of the Company, to whom the payment was made. Not that he thereby acquired a right to come in next after the Company, but to stand in the shoes of the Company, and with like effect, as if they had executed to him a formal assignment of so much of the mortgage, which would of course have placed them on a footing of perfect equality ; and in the case of deficiency in the security, the loss would have been shared by them in proportion to the amount due each.

But can it be contended that such is the effect in equity of this payment by Mr. Swann ? For unless it be so, I can conceive of no principle upon which he can maintain the position now assumed for him. There seems to me no middle ground. If by the payment of the money an assignment was effected by operation of law, it was effected then immediately upon the payment, and at once placed the party paying alongside of the party paid, and equally entitled with him to participate in the common security. Such, however, I am very confident was not within the contemplation of the parties, and would not be in accordance with the principles of justice. It never was, or could have been intended by these parties, that by paying this money Mr. Swann should be lifted to a level with the assignee of the mortgage, and if loss occurred, it should fall in proportion upon him as such assignee.

It is very clear, that the right of substitution claimed for Mr. Swann can receive no aid from the Act of 1763, ch. 23 ; that Act, as was observed by the Court of Appeals, in the case of *Creager* vs. *Brengle*, 5 *H. & J.*, 234, only conferring the right to make the assignment authorized by it upon the original creditor, and not upon the assignee of such creditor, and therefore, if the right claimed in this case can be admitted, it must rest upon the principle of equity, that a surety on paying the debt of the principal debtor, has a right in a Court of Chancery to call on the creditor for an assignment of the claim against the principal, and all liens which he has given the creditor, a principle too firmly established in this State to be for a moment called in question.

The payment by Mr. Swann in this case was not to the original creditor, the Neptune Insurance Company, but to the Baltimore Life Insurance Company, the assignee of the first-named Company, and the Life Insurance Company could not, if disposed to do so, have made an assignment under the Act of 1763, ch. 23, as was expressly adjudged by the Court of Appeals in the case referred to.

And it appears to me to be equally well settled in this State, that even when the payment is made by the surety to the original creditor, an assignment under the Act of the Legislature cannot be demanded, unless the payment be *in full*. This was decided by the Court of Appeals, in the case of *Hollingsworth* vs. *Floyd*, 2 *H. & G.*, 87 ; and it was in the same case also declared to be the settled doctrine in equity, that a surety paying the *entire debt* had a right in Chancery to an assignment of the judgment against the principal debtor, and of all liens which the principal had given the creditor. And it was further said by the Court in this last case, that " it would not subserve the ends of justice to consider the assignment of an entire debt to a surety, as effected by operation of law, where he had paid but a part of it, and still owed a balance to the creditor, and this Court would not countenance such an anomaly as a *pro tanto* assignment, the effect of which could

only be to give distinct interests in the same debt to both creditor and surety."

If the doctrine announced in the case referred to, be applicable to this, it puts an end to this part of the controversy, because Mr. Swann has paid but a very small portion of the debt; and if he is, upon the principles of equity, entitled to an assignment *pro tanto* of the mortgage, we have the very anomaly which the Court of Appeals said they would not countenance.

It is said, however, that the case of *Hollingsworth* vs. *Floyd* was a case at law, and that we are in equity unfettered by those technical rules which sometimes are too stubborn to yield to considerations of justice and right.    But though *Hollingsworth* vs. *Floyd* was a case at law, it came before the Court upon a motion to quash an execution; and it is believed to be well settled, that upon such motions, the Courts exercise a *quasi* equitable jurisdiction, and feel themselves less restrained by technical rules, than when exerting their ordinary powers.    At all events, it is, I think, impossible to read the opinion of the Court, in that cause, and not come to the conclusion, that neither at law nor in equity, could a surety call for an assignment from the creditor, or be clothed, by mere operation of law and upon principles of equity, with the rights of an assignee, unless he had paid the *entire debt*, and, of course, had wholly satisfied the claim of the creditor.

The doctrine of *Lidderdale* vs. *Robinson*, 2 *Brock. Rep.*, 160, is in perfect harmony with that which prevails in this State.    It certainly does not carry it any further, unless it may be supposed to be carried further by the determination, that the same rule applied as between co-sureties.    So far as the law of principal and surety is concerned, and the rights of the latter to be substituted to every equitable intent and purpose in the place of the creditor whose debts he has discharged, the principles of the case of *Lidderdale* vs. *Robinson* are precisely those which obtain in our Courts.

But another objection, and, as it appears to me, one of great force, is made to this right of substitution, claimed for Mr.

Swann.   This gentleman was in no way connected with the original transaction between Rebecca Dorsey and the Neptune Insurance Company.   But after she had conveyed her equity of redemption to Edward H. Dorsey, Mr. Swann endorsed certain notes, given by the latter to the assignee of the Neptune Insurance Company, for interest due upon the mortgage. The remarks of *Chief Justice Marshall*, in the case of the *Bank of the United States* vs. *Winston's Ex'or*, 2 *Brock. Rep.*, 254, are well worthy of attention in considering this question; and certainly are calculated to awaken serious doubts with reference to the rights of a party, not bound by the original security, to be substituted to all the rights of the original creditor upon paying him the debt.   And these doubts are strengthened, in this case, by the circumstance that Mr. Swann never did become the surety of the original principal debtor, Rebecca Dorsey, but of Edward H. Dorsey, the assignee of the equity of redemption.

But, it is said, the second mortgagee is in no way injured by what Swann did, or by what is now claimed for him; that the whole amount of the prior incumbrance, principal and interest, must be paid before the second mortgage can be let in; and this, of course, is quite true.   But it is equally true, that the interposition of Mr. Swann, in paying this money, has turned interest into principal, to the manifest prejudice of the second mortgagee, as upon examining the Auditor's statement of claims plainly appears.   The amount paid by Mr. Swann, as interest, amounted to $443 55; and this sum is now swelled, by the interest which has accrued upon it, to upwards of $560. It is most obvious, that a repetition of this operation, from time to time for a series of years, as interest upon the mortgage debt falls in arrear, would most seriously affect the junior incumbrancer, and might, in process of time, exclude him altogether from the benefit of the security, or, at all events, very much impair his right under it.

I am, therefore, of opinion, that the right of substitution claimed cannot be maintained; and that the exception of Mr. Glenn to this claim, No. 12, must be ruled good.   The holder

of this claim must take rank, as a simple contract creditor only, and be treated accordingly.

The next question relates to the allowance for commission, as claimed by the trustees, upon the proceeds of the sale, which was to have taken place on the 15th of October, 1846; but which was postponed, at the instance of Edward H. Dorsey, and concurred in by the opposite party, according to the statement in the trustees' report (this opposite party being the Baltimore Life Insurance Company). "And the trustees further report, that upon the occasion of this postponement, the said Edward H. Dorsey entered into a stipulation with your trustees, for payment of commissions and expenses."

If there remained a surplus of the proceeds of sale, after paying all claims against the mortgaged property, which surplus would belong to Dorsey, it might be a question, how far he would be bound by his stipulation with the trustees to pay their commissions for postponing the sale, though such engagements, under ordinary circumstances, should not, I think, be regarded with a very favorable eye. But as there is no surplus, the proceeds of sale, on the contrary, being altogether insufficient to pay the claims of creditors who come in after the Baltimore Life Insurance Company, it appears to me quite plain, the claim cannot be allowed. If allowed at all, it must be at the expense of parties, who neither approved or knew of the stipulation; and those who did know and approved of it, bear no part of the burden, the claim of the Insurance Company being paid in full, and there being nothing left for Dorsey, whether the commission is allowed or not.

There is, moreover, another reason, which is conclusive against the right of the trustees to have this commission paid out of the proceeds of sale. Their contract was with Edward H. Dorsey, *personally*. The report states, that "the said Edward entered into a stipulation with your trustees for payment of commissions and expenses." The contract was not that they should be paid *out of the proceeds of sale*, but that Dorsey should pay; and to Dorsey, it seems to me, they must look for payment. If it had been intended that the commis-

sion should come out of the proceeds of the sales, the contract should have been entered into by the Insurance Company, the creditor, as well as by Dorsey, because, in the event of a deficiency, the loss would have fallen upon the creditor; and, therefore, the fact, that it was the stipulation of Dorsey alone, is strong to show, that he, and he alone, was to pay it.

I am, therefore, of opinion, that no commissions can be allowed upon the postponed sale.  The trustees are, of course, entitled to commissions, according to the rule of the Court, upon the proceeds of sale actually made, and to all the usual expenses attending it, and the preceding attempt to sell, which was ineffectual.

It is believed that the decision of these two questions, will enable the Auditor to state an account, finally settling the whole case.

DONALDSON and MAYER, for Swann, and the Trustees. .
R. W. GILL, for Glenn, and Patterson.

[Separate appeals were taken by Swann, and the trustees, from the order of the Chancellor, passed in accordance with the above opinion.  Upon the appeal of the trustees, the order disallowing their claim has been affirmed.  The appeal of Swann, is still pending.]