## GANNETT *v.* BLODGETT.

The endorser of a promissory note, payable on time with interest annually, and secured by a mortgage of real estate, who has been compelled by the endorsee to pay the annual interest due thereon, cannot maintain an action upon the mortgage, to recover possession of the mortgaged premises, while the note still remains the property of the endorsee, and the principal sum is due to him thereon.

A surety cannot, either at law or in equity, call for an assignment of the claim of his creditor against his principal, or be clothed, by operation of law and on principles of equity, with the rights of an assignee of such claim, unless he has paid the entire claim of the creditor ;—a *pro tanto* assignment, by way of substitution or subrogation, is not known or allowed.

WRIT OF ENTRY upon a mortgage, brought under the following circumstances :

On the first day of April, 1853, the plaintiff, William Gannett, sold and conveyed to Mary S. Blodgett, one of. the defendants, and wife of Nathan Blodgett, the other defendant, the demanded premises, and at the same time said Mary S. and Nathan joined in giving back to the plaintiff a mortgage of said premises, to secure their two

joint and several notes for $1000 each, payable to the plaintiff, or order, one in five and the other in ten years from date, with interest annually. In December, 1855, the plaintiff sold and endorsed the notes in blank, waiving demand and notice, to one Moses Mead, and delivered the same, with said mortgage, to Mead. The interest on said notes, from April 1, 1855, to April 1, 1856, being unpaid, Mead sued Gannett for the same as endorser of said note, and recovered judgment against him in October, 1856, for $124.12 damages, and $6.21 costs; which judgment the plaintiff paid, and then sued the defendants for the same, as money paid and laid out at their request; and at April term, 1857, (the court expressing some doubt about the right to recover against the wife) judgment was rendered in favor of the plaintiff against Nathan alone, for the sum of $134.41 damages, and $11.80 costs, which judgment is still unpaid.

The interest on said notes, from April 1, 1856, to April 1, 1857, being unpaid, in April, 1857, the plaintiff was again sued as endorser of said notes, and at May term, 1857, judgment was rendered against him for $125.15 damages, and $6.35 costs, which judgment he paid before the commencement of this suit. The sums paid by the plaintiff before this suit was commenced, and interest up to May 1, 1858, amount to $289.71. Mead is still the owner of the notes and mortgage, by virtue of the sale thereof to him by the plaintiff, and the latter has no interest therein, except so far as he may have acquired an interest by the payments aforesaid to Mead, and has never had any authority from Mead to sue for the possession of the demanded premises, and Mead has always had the possession of the notes and mortgage since the plaintiff assigned them to him.

It was agreed by the parties that such judgment be rendered in the case, as, in the opinion of the court, the foregoing statement of facts demanded.

*J. S. Bryant,* for the plaintiff.

*N. B. Felton,* for the defendants.

FOWLER, J.   The endorsement of the notes, mentioned in the case, by the plaintiff to Mead, operated to transfer both notes and mortgage to him, so that thereafterwards · the plaintiff had no legal interest in either.   No suit upon the mortgage could thereafter have been maintained but in the name of Mead.   *Little* v. *Ingalls,* 13 N. H. 44; *Rigney* v. *Lovejoy,* 13 N. H. 247.

The notes and the mortgage still remain generally the property of Mead, and unless the payment of the annual interest upon the notes by the plaintiff can be regarded as having in some way operated to vest in him a title to the notes and mortgage, *pro tanto,* it is entirely clear that the present action cannot be maintained.

It has been contended that, by endorsing the notes, the plaintiff became surety for their makers, the defendants, to Mead, and that upon paying to Mead the amount of the notes he would be entitled, as such surety, to be substituted or subrogated to all his rights, as respects the mortgage security given by their makers for the ultimate payment of the notes; that, for the purpose of protecting the rights of the plaintiff, and carrying out what might properly be presumed to have been the intention of the parties, the law, in such case, would regard the notes and mortgage as reässigned to the plaintiff, upon such payment; and that, upon the facts of the agreed case, the plaintiff having paid a portion of the notes, the law must regard the notes and mortgage as reässigned, *pro tanto,* to him.

The rule is undoubtedly well established in this State, that where the money due upon a mortgage is paid, it shall operate as a discharge of the mortgage, or in the nature of an assignment, substituting him who pays it in · the place of the mortgagee or assignee of the mortgage,

as may best serve the purposes of justice and the just intent of the parties. In other words, the mortgage will be kept on foot and held as security over the land, or will be regarded as extinguished by the payment, as may be required by the justice of the case and the intention of the parties; the intention of the parties being the governing principle, where that intention is consistent with the justice of the case; and the intention will be presumed to correspond with the rights and interest of the parties, unless a contrary intention is very plainly expressed or necessarily implied from the form and nature of the transaction. *Robinson* v. *Leavitt,* 7 N. H. 106; *Towle* v. *Hoit,* 14 N. H. 61; *Bell* v. *Woodward,* 34 N. H. 90; *Wilson* v. *Kimball,* 27 N. H. 300; *Adams* v. *Hill,* 29 N. H. 211.

Admitting the correctness of the position assumed by the plaintiff, that if he had paid Mead the whole mortgage debt he would have been entitled to a reässignment of the mortgage, and that, upon principles well settled in this State, the law would, upon such payment, have regarded the debt and mortgage as reässigned to him, the material question remains, whether the payment by the plaintiff of the annual interest only upon the mortgage notes, can operate in law to reässign the mortgage to him, *pro tanto,* so as to enable him to maintain an action thereon, in his own name, to recover possession of the mortgaged premises,—the notes themselves remaining unpaid and the sole property of Mead? It seems to us quite plain that it cannot. The right of substitution or subrogation could only accrue to the plaintiff upon his payment to Mead of the whole amount of his claim. Mead's rights must be entirely divested, before another can be substituted, by mere operation of law, in his place, as respects those rights, so as to have them vest in him. *Stamford Bank* v. *Benedict,* 15 Conn. 437; *Belcher* v. *Hartford Bank,* 15 Conn. 381; *Kyner* v. *Kyner,* 6 Watts 221; *Union Bank of Maryland* v. *Edwards,* 1 Gill & J. 346.

A surety can, neither at law nor in equity, call for an assignment of the claim of the creditor against his principal, or be clothed, by the mere operation of law, and upon principles of equity, with the rights of an assignee of such claim, unless he has paid the entire debt of the creditor. A *pro tanto* assignment will not be allowed. *Neptune Insurance Company* v. *Dorsey*, 3 Md. Ch. Dec. 334; *Grove* v. *Brien*, 1 Md. 438.

There can be no presumption of any intention of the parties, under the circumstances of the present case, to have the payment of interest operate as an assignment of the mortgage *pro tanto*. The rights of the parties and the justice of the case require no such thing, but the contrary. It would not subserve the ends of justice to consider the assignment of an entire debt to a surety, as effected by operation of law, when he has paid but a part of it, and still owes a balance to the creditor; and this court would not countenance such an anomaly as a *pro tanto* assignment, by operation of law, under such circumstances, the effect of which could only be to give distinct and conflicting interests in the same debt to both creditor and surety. As the owner of the entire debt and mortgage, Mead was entitled to the possession of the demanded premises, and the rents and profits thereof, for the security of his debt. The contract of the plaintiff gave him this, and there can be no presumption of any intention of the parties, in the payment and receipt of the annual interest, to deprive Mead of any portion of his rights, against the express contract of the plaintiff when he assigned the debt and mortgage to him. Besides, if, by the payment of the annual interest, such portion of the mortgage were reässigned to the plaintiff as would enable him to maintain an action to recover possession of the mortgaged premises, he might not only receive the rents and profits to which Mead was entitled by the express terms of his own contract, but we see not why he might not foreclose the

Gannett *v.* Blodgett.

mortgage, for condition broken, against all the world, and thus effectually deprive Mead of all security from the mortgaged premises for the ultimate payment of his debt. If by the payment of the annual interest upon the notes by the plaintiff, an assignment *pro tanto* of the mortgage were effected by operation of law, the plaintiff would thereby, to all purposes and every intent, have been placed upon a footing of equality with Mead, and be equally entitled with him to participate in the common security. There would be no priority in that portion of the mortgage retained by Mead, over that portion of it thus reassigned to the plaintiff. If Mead might have foreclosed the mortgage for non-payment of the annual interest, the plaintiff could do the same; and unless Mead should redeem from the foreclosure, by refunding to the plaintiff the amount of the annual interest, with interest thereon, and costs of suit, before the foreclosure should be perfected, it is difficult to perceive how he could preserve to himself any valuable lien upon the mortgaged premises for the security of his debt. Yet, such a result is absurd, and seems to demonstrate the want of any sufficient foundation for the plaintiff's claim to support the present action. *Hollingsworth* v. *Floyd,* 2 Harris & Gill 87; *Neptune Insurance. Company* v. *Dorsey,* 3 Md. Ch. 334.

With these views, according to the agreement of the parties, on the facts stated there must be

*Judgment for the defendants.*