Grove vs. Brien.

contained twenty-seven and three-fourths acres.  He was only apprised of this fact by the survey.  If he actually purchased forty acres, in justice and law, he was entitled to that quantity, and his going on the land in ignorance of its true quantity, cannot be construed as a waiver of his rights.  To constitute a waiver, he must have taken the property, with a knowledge of its true quantity, and accepted it as a fulfilment of the contract.  From what we have said in regard to the prayer contained in the fourth exception, it follows, we concur with the court below in its instruction, contained in the sixth exception.

The prayer of the defendant, contained in the fifth exception, is erroneous, and ought not to have been granted by the court.  It asserts two propositions, antagonistic to each other. It first denies all right of recovery, under the pleadings in the cause, if the lot did not contain forty acres, and then claims the right to abate a portion of the purchase money.  We, of course, hold, that the defendant was entitled to an abatement, if the lot did not contain forty acres, provided the jury should find, that he purchased that quantity; but we do not concur in the opinion, that if there was a less quantity, that there could be no recovery under the declaration in this case.  The defendant, in any view, was responsible for the quantity which he actually received.  If he purchased forty acres, he was not bound to receive a lesser quantity, but if he choose to do so, he is responsible for it.  We therefore reverse the county court on this exception.

*Judgment reversed and procedendo awarded.*

---

## Jacob H. Grove *vs.* J. A. Brien, Executrix of John McPherson Brien.

What is the correct construction of an agreement entered into in this case, between judgment creditors of the defendants testator, and the plaintiff, who as his security had paid a sum of money for the defendant's testator?

Grove *vs.* Brien.

An instruction asked by the plaintiff was properly rejected, because the truth of the facts were assumed, instead of submitting that question to the jury.

A case in which a promise to pay interest would be without consideration and void.

When a surety pays part of a judgment, it gives him an equitable interest in the judgment to that extent, the payment by the security does not discharge the principal, so as to affect the rights of the security, except with the consent of the latter.

A partial payment by a surety does not operate as an assignment to him *pro tanto*, so as to enable him to exercise any control over the judgment or execution. He, however, has an equitable interest to the extent of his payment, snd that interest he may release or transfer.

THE case is as follows: Robert Gilmor held two mortgages against Brien, the one dated 22nd day of October 1841, for various sums and liabilities, amounting in the aggregate to $114,832.82. The other dated 8th June 1842, for debts and liabilities amounting to $198,495.73.

There were certain judgments recovered by sundry creditors of Mr. Brien against him in Washington county court, subsequent to the date of the first mortgage of Mr. Gilmor, and prior to the date of the second, which amounted to about $17,000. Mr. Gilmor being desirous to purchase in these judgments, agreed with the said judgment creditors that he would pay the principal of each judgment with interest to the date of the judgment, for the assignment of each judgment for the whole amount to him.

Among these judgments was one of the Washington County Bank against John McP. Brien, as principal debtor, and Jacob H. Grove, the appellant, as his surety for $4000, with interest from 1st August 1840.

The appellant being bound for the whole amount of the judgment, to the bank, with a probability that he might have it to pay, if Mr. Gilmor enforced his first mortgage against Brien's property, did, according to some of the proof, agree that the bank should assign the judgment to Mr. Gilmor, upon the terms agreed to by the other creditors.

Mr Gilmor did arrange the matter with the bank, one of the stipulations of that arrangment being, that Mr. Gilmor should release Grove from his joint liability on the judgment.

The judgment of the bank was signed March 29th, 1842, the debt bearing interest from the 1st August 1840. Mr. Gilmor was therefore, by the arrangement, to pay to the bank this debt of $4000, with interest from 1st August 1840, to the 29th March 1842.

But as Mr. Gilmor had paid a portion of the interest accruing on the judgment before the date of its rendition, Mr. Gilmor paid the interest to Grove, instead of to the bank.

In the note to the bank on which the said judgment was rendered, Col. John McPherson of Frederick, was a co-surety of the said Grove. McPherson's property having been sold for the payment of his debts, by William J. Ross, esquire, his trustee, Mr. Grove, after the above arrangment was made with the judgment creditors, filed his petition on the equity side of Frederick county court, setting forth the terms of the arrangement with Mr. Gilmor, and praying the court to order the trustee to pay to Grove, out of the proceeds of Mc-Pherson's estate, its fair contribution of the moneys paid to the bank by Grove.

A witness proved that Grove, at the time he assented to the arrangement between the judgment creditors of Gilmor, said that Brien had promised to pay him, Grove, the amount he, Grove, had to pay the bank.

The facts of the case are stated more fully in the remarks of the appellant's counsel, and are not disputed.

The plaintiff offered the three following prayers :

1st. That the court instruct the jury, that under the facts in this case, the plaintiff is not precluded from recovering, unless they shall believe, that by the arrangement between Gilmor's agent and the plaintiff, the plaintiff was to relinquish his demand against Brien, for the plaintiff's payments in the judgment of the Washington County Bank in favor of Gilmor.

2nd. The court instruct the jury, that if they shall believe

from the evidence, that the plaintiff did assent to the assign-
ment to Gilmor, on the terms stated, as a security in the
judgment assigned, and in order to authorise the bank to
make the assignment and compromise with Gilmor, without
discharging the plaintiff as a security in the judgment; and
shall further believe, that the plaintiff paid on the judgment
the sum of $——, which has never been reimbursed to him,
he is entitled to recover.

3rd. The court instruct the jury, that if they do find that
the plaintiff became a party to the compromise between Gil-
mor and the judgment creditors of Brien, and assented to the
assignment of the judgment of the Washington County Bank
to Gilmor, he is not precluded from recovering in this action,
if they shall also find that he became a party to such compro-
mise, and assented to such assignment, with the understand-
ing and condition, that he was to hold Brien responsible to
him for the money the plaintiff hath paid in said judgment,
and which was not refunded to him.

The defendant below then asked the following instructions:

1st. If they believe from the evidence, that the judgment of
the Washington County Bank against the said Brien and
Grove, of the 29th of March 1842, was bargained and sold
by the said bank, with the assent of the said Grove, to the
said Gilmor, according to the terms of the said compromise,
and that at the time of such bargain and sale, the said judg-
ment stood open upon the docket, that neither of the sums
paid to the said bank by the said Grove had been credited
upon the said judgment; and if the jury shall further be of
opinion, that there was no stipulation or agreement between
the parties to the said arrangement, that the said payments
should be so credited on the said judgment, that then the said
Gilmor, or his representatives, are entitled to an assignment
of the said judgment for the whole amount thereof, and with-
out such credits being entered thereof. That the said Brien
being liable under such circumstances to the said Gilmor, for
the whole of the judgment, and that a positive promise of the
said Brien to pay the said Grove any portion of moneys so

56      v.1

paid by him, would be *nudum pactum* and void, and no action could be maintained upon such promise.

2nd. The defendant prays the court to instruct the jury, if they believe from the evidence, that Grove, the plaintiff, though he did not sign the paper containing the terms of compromise with the other judgment creditors, yet that he did agree verbally to those terms; and if they shall further believe from the evidence, that at the time of declaring his acceptance of the said terms, the said Grove did not demand any stipulations in his case, different from those contained in the said written paper, and that none such were agreed to by the agent of the said Gilmor, that then the said Grove is bound by the said compromise as contained in the said paper, in the same manner that those who signed the said paper were bound by it, and the said Grove is not entitled to re-cover. And that the remark of the said Grove to the agent of the said Gilmor, that he meant to resort to the said Brien for the money paid by him under the said compromise, or that the said Brien had promised to pay the same to him, could make no difference in the rights of the said Grove, on the liability of the said Brien.

3rd. The defendant prays the court to instruct the jury, that if they believe from the evidence that a compromise was made between certain judgment creditors of John McPherson Brien and Robert Gilmor, as stated by Mr. Neill, and con-tained in the paper shown by him, and in his handwriting, that the plaintiff in this cause became a party to said compro-mise, according to the terms thereof. That the said plaintiff assented to the assignment of the judgment of the Washington County Bank to the said Gilmor, upon the terms mentioned in said compromise, and that the said plaintiff, by such com-promise, was to pay to the bank the interest on said judgment from the rendition of said judgment to the 1st of June 1845, then the plaintiff is not entitled to recover from Brien, or his executrix, any part of the interest so paid by him under the said compromise.

The prayers asked by defendant were granted, and those

asked by the plaintiff were refused, and the plaintiff to each ruling of the court below excepted. The verdict being against him, the plaintiff appealed.

The case was argued before ECCLESTON, TUCK and MASON, J.

By *Jervis Spencer* for the appellant, and *William Price* for the defendant.

*Spencer* for the appellant.

This suit was brought by the appellant, to recover against the appellee's testator, reimbursement for a sum of money paid by the appellant, upon a judgment of the Washington County Bank against the testator, as principal, and the appellant as his security.

As to the judgment, the position of Grove as security in it, and the payment by him of the money for which he sued, there was no dispute.

The defendant, however, proved, that Robert Gilmor had held, and did hold, two certain mortgages against Brien's land, and was in possession; that a certain class of creditors of Brien, who held judgments of a date between the date of the two mortgages, (the judgment in this case being one of them,) had instituted proceedings in the high court of chancery, for the purpose of having an account of the rents and profits of said land, and of the sum due on the first mortgage, and for a sale of the mortgaged premises, in order to pay the mortgage and judgments ; that Alexander Neill, as the agent of Gilmor, entered into a written agreement or compromise with these judgment creditors, that they would accept from Gilmor, the mortgagee, the original amount of the judgments, with interest to the time of their rendition, abating the subsequent interest. Gilmor was to give his notes for the amounts payable at future days, with interest from 1st June 1845, and if he punctually paid the notes and interest, the judgments were to be assigned to him : if otherwise, they were still to belong to the said creditors. The Washington County Bank

did not sign this agreement, nor did Grove, the security of Brien; but Mr. Neill proved that Grove had assented by parol, to said written agreement, and to the assignment of the Washington County Bank judgment to Gilmor; after which the bank agreed to assign the judgment to Gilmor; but required all of the interest which was not paid by Gilmor under the arrangement, to be paid to them by Grove. Grove had paid to the bank, $1150 of interest, of which $388.66 accrued prior to the date of the judgment, for which Gilmor gave his note and took his receipt, as for the *balance due on the compromise of the Washington County Bank judgment.* The sum of $761.34, being the interest between the date of the judgment and the time of compromise with Gilmor, is what Grove seeks to recover against Brien in this action. Mr. Neill further proved, that Grove reluctantly gave his assent to the arrangement; that before he did so, and some time after the date of the agreement with the judgment creditors, he Mr. Neill, being the agent of Gilmor, wrote to Grove, stating, *"every disposition will be shown, to accommodate you, and, I think, to meet your views;"* and, that at the time Grove assented to the written agreement, between Gilmor and the judgment creditors, he said Brien had promised to pay him the balance of the money, which, as his security, he paid the bank, after deducting the amount of the note Gilmor gave him; to which no objection appears to have been made. There are some other facts in the case, which are not considered as material, to the question presented to this court.

The grounds taken in the court below, and which seem to be recognized by the court, in their instructions, were, that there is a breach of the engagement with Gilmor, for Grove to demand this sum from Brien; that there was also some kind of wrong done to Brien: and a breach of good faith to the judgment creditors of Brien.

I cannot perceive, that the case places Mr. Grove in any position that is not perfectly fair to all parties, or that he has lost any of his rights as security to reimbursement. He is certainly entitled to reimbursement, *unless he stipulated* to

waive or release it.    Can it be pretended that he did any such thing?    The only proof of Grove agreeing to any thing, is the evidence of Mr. Neill, who swears that when Grove agreed to the compromise with the creditors, which was nothing more than an agreement that Gilmor should hold the judgment instead of the bank, he said Brien had promised to pay him the sum he is now suing for.    This does not look like an agreement to waive, or release Brien's personal liability to him.    There was no fraud, no deceit, practised upon Gilmor.    It looks much more like a fraud upon Grove to attempt to deny to him, what he plainly intimated was a material consideration with him, in agreeing to the arrangement. These judgment creditors were forcing Mr. Gilmor, the mortgagee, by proceedings in chancery; and Grove's assent was simply to suspend the proceedings against the land, by which it was expected to realize the whole amount of the judgment, in which he was security; and when doing this he was willing to take the personal liability of Brien, for the amount not reimbursed to him by Gilmor.    This was perfectly legitimate.

Again, Mr. Neill says, that Grove assented to the assignment of the Washington County Bank judgment and to said written agreement.    Grove was not a judgment creditor. The agreement was not intended for him.    He only signified his assent, that the bank should become a party to it, and should suspend their proceedings, which otherwise they could not do without releasing Grove.    Whether the judgment was in the hands of the bank or Gilmor, could make no difference to Grove.    Whether the judgment should be pressed against the land might make a great difference to him, and he was not satisfied that the bank should put it out of its power to press the judgments, until he was exonerated, upon such part of the judgment as was unsatisfied, and was transferred to Gilmor.

If there was a violation of the agreement that Grove assented to, it was by the Bank.    That agreement was prepared for and signed by the judgment creditors, and they agreed generally to forego part of the interest; that part which forms

the subject of this action.   But the bank demanded and received the whole, and with the assent of Gilmor's agent.   It seems to be assumed by the 1st prayer granted to the defendant, that Gilmor was to take the judgment, without a credit for the sum now claimed by Grove.   This is in the face of what Grove said at the time he gave his assent to the assignment; for if Brien was to reimburse him, he was of course entitled to the credit.   It is also in the face of the statement of Gilmor's own agent.   The statement signed by Mr. Neill, shows the whole amount paid by Grove on the judgment, and Mr. Gilmor knew, at least the law supposes he knew, that the assignment could not convey to him the part of the judgment which had been extinguished by payments.   This demand of Grove could not diminish one cent of the amount assigned to Gilmor by the bank.   Judgments are not bills of exchange and notes to pass for what is due on their face. *Bank vs. Abbott,* 3 *Denio,* 181.   *Onager vs. Brendel,* 5 *H. & J.,* 240.

If it could be presumed, that Grove was also to assign his claim against Brien on account of payments made by him, for which he was sued, in the face of his declarations to the contrary, he was not in a situation to assign any part of the judgment.   *Onager vs. Brengle,* 5 *H. & J.,* 234.   *Watkins vs. Worthington,* 2 *Bland,* 529.   As it is clear from the statement signed by Mr. Neill and furnished to the bank, that Gilmor could not pretend to keep this judgment open for the sum now claimed by Grove; and as it is equally clear, that Grove could never enforce the payment of it by execution, it is a necessary corrollary, that Brien could never be compelled to pay the money over twice, if Grove recovers it in this action.

Again, it is said, this was a compromise among Brien's creditors, (Grove being one of them,) and that the others, agreeing to abate a part of their claims, it is not in good faith for Grove to have more than they, nor could he have a secret understanding for that purpose.   There was no compromise with Brien, nor any understanding, that a farthing of the

judgment shauld be abated in his favor. It was a mere agreement, as to the sale of the judgments, and the liability of the judgment debtors remained the same after the assignment, as before. There is in this, no similarity to the case of composition, between a debtor and his creditors; and if this were such a case, the agreement should be under seal. 2 *Johns.*, 448. *Geiser vs. Kershner*, 4 *G. & J.*, 305. 5 *Pick.*, 46.

It will also be observed, that under the agreement, the case has two aspects:—1st. If Gilmor should pay the notes, given by him, he should become the exclusive creditor, in which event, Grove having communicated to him, or his agent, that he was to be reimbursed, he could not say there had been any deceit or imposition. 2nd. If Gilmor did not pay, the judgments were still to be the property of the original judgment creditors, *for the whole amount;* and in this aspect, it could not be pretended, that Grove's claim *is not* perfectly regular.

The 1st prayer of the defendant, ought to have been rejected; because it assumes there is evidence, that the Washington County Bank judgment was assigned to Gilmor, *according to the terms of the compromise with the creditors,* when the paper signed by the bank and all the evidence, show the reverse; because it assumes, that there must have been an agreement between the parties, that the payments made by Grove, on the judgment, should be credited on it, in order to give a right to such credit, which is not law. Whether the payments were entered on the docket or not, was immaterial. Gilmor knew of the payments, as they are embraced in the statement signed by his agent, corresponding with Grove's receipts; and because it assumes, that under the assignment of the bank to Gilmor, Brien is liable to Gilmor on the judgment, for the payments made by Grove upon it, which is contrary to law.

The 2nd prayer of the defendant, besides assuming that Grove was a party to the agreement, which is clearly against the evidence, asserts that Grove's statement, that he meant

to resort to Brien, and that Brien had promised to pay the interest not reimbursed to him, could make no difference in the *parol* understanding, which took place at the same time, which cannot be correct. His assent must be taken with its contemporary qualifications.

The 3rd prayer of defendant asserts, that if Grove assented to the assignment of the judgment to Gilmore, upon the terms mentioned in the compromise; and that Grove, by the compromise, was to pay to the bank the interest, the reimbursement of which is now demanded, then the plaintiff is not entitled to recover. This assumes that Grove, by agreeing to the transfer, lost his right as security. The interest he was bound to pay, with or without the compromise, and his agreeing to do, what he was otherwise bound to do, could not take away his right to reimbursement. This prayer is liable to the further objection, that it took away from Grove the benefit of any understanding between him and Gilmor, that he retained his right to reimbursement.

All the defendant's prayers are liable to the objection, that they were predicated upon a misapprehension, that the compromise was between Brien and his creditors, Grove being one of them.

The 1st prayer of plaintiff ought to have been granted, because it asserted, what seems to be plain law, that the plaintiff being a security, was not precluded from recovering for his payments, unless the jury believed he had relinquished his demand in favor of Gilmor, there was no pretence of relinquishment in favor of any one else.

The 2nd prayer of plaintiff ought to have been granted; it asserted that if Grove assented to the assignment to Gilmor, on the terms stated, *as a security*, and in order to authorise the bank to make the compromise and assignment without discharging Grove as security, he is entitled to recover. It will be observed, that the power of the bank over this judgment, was to be suspended by the arrangement, (see the paper signed John Van Lear, president,) that the power of Gilmore over it as assignee, was not to be consumma-

Grove *vs.* Brien.

ted until a long time after, and that on certain contingen-
cies, it was to revert to the bank. If, therefore, the bank
had entered into the arrangement without the consent of
Grove, it would have discharged him as security. That the
bank should have required the assent of Grove, was no doubt
to avoid that result. At any rate it is a fair inference. And
it would be unreasonable to say, that having assented for
such a purpose, he lost his claim against Brien. If he had
not paid the interest to the bank, without a release, he would
have been liable for it to Gilmor upon the assignment; and
he would be equally entitled to it, whether he paid it before
or after the assignment.

The 3rd prayer of plaintiff ought to have been granted. It
merely asserts, that if Grove became a party to the compro-
mise, he is not precluded from recovering; if he did so with
the understanding and condition that he was to hold Brien
responsible to him for his payments.

*Price* for the appellee.

The prayers offered by the plaintiff, though couched in dif-
ferent words, assume that the plaintiff, Grove, is entitled to
recover, unless he agreed to discharge Brien.

The correctness of this assumption cannot be maintained.

The instruction asked by the defendant below, and which
the court granted, pronounce any promise by Brien to pay
Grove any portion of the money to be *nudum pactum*, and
insist that if the plaintiff made himself a party to the arrange-
ment, made by the other creditors, without requiring any
stipulation in his case different from those, he was not entitled
to recover. There was no evidence that Brien ever did
agree to pay Grove; and if there had been any such agree-
ment it would have been *nudum pactum*, because he was
liable to Gilmor for the whole amount of the judgment.

ECCLESTON J., delivered the opinion of the court.

The important question in this case is, whether, by virtue
of the arrangement, entered into between the plaintiff, the Wash-

57      v.1

ington County Bank and R. Gilmor, in regard to the transfer of the judgment, recovered by the bank, against Brien and Grove, to Gilmor, Grove relinquished in favor of Gilmor, the interest from the date of the judgment to the 1st of June 1845, and which Grove had paid, as surety for Brien.

The agreement in evidence, which was signed by certain judgment creditors of Brien, clearly provides, that the parties shall assign their judgments, for the use of Gilmor, upon receiving from him the principal and costs, with the interest to the date of their judgments. Thereby giving up, for the benefit of Gilmor, all the interest, accruing between the date of the judgments and the time of the arrangement. Grove did not sign this agreement; but Neill, the witness, says, he agreed that the bank's judgment should be assigned, and that he assented to the written agreement, between the judgment creditors and said Gilmor." After which, the bank took Gilmor's note for the principal, the costs and the interest, up to the date of the judgment, abating the portion of that interest paid by Grove. The bank agreeing, that when the note should be paid, the judgment was to be absolutely assigned to Gilmor, without recourse to the bank; that the same should be entered for his use, and that he should execute a release to Grove, of his joint liability for said judgment.

Gilmor then gave his note to Grove, for the amount of the interest paid by him, which had accrued prior to the date of the judgment. For which note Grove gave Gilmor a receipt, stating it to be for the "balance due on the settlement of the Washington county bank's judgment, agreeably to the terms of compromise."

When Grove assented to the arrangement, he said he was willing to do so; and added, that Brien had promised to pay him the balance of the money, which he had paid to the Bank, after deducting the amount of Gilmor's note. This declaration of Grove was brought out by the cross-examination of Neill, (the defendant's witness,) and was part of a conversation introduced by the defendant.

At the trial the plaintiff submitted three prayers, all of which were refused. And the defendant offered three also, which the court granted.

The first of the plaintiff's prayers asked the court to instruct the jury, that under the facts in this case he was not precluded from recovering, unless they should believe he had relinquished, in favor of Gilmor, his claim against Brien for the payments made on the judgment of the bank.

This instruction was refused by the court. And in our opinion they were right in doing so.

In *Ragan vs. Gaither*, 11 *G. & J.*, 479, the defendant set forth, in a prayer, certain portions of evidence, and asked an instruction upon them to the jury. The court refused the prayer, but instructed the jury "that upon the aforegoing statement of facts, the plaintiff is entitled to recover the whole amount of the purchase money." On page 489 it will be seen that the Court of Appeals reversed this decision, because it assumed the truth of the facts, instead of submitting that question to the jury. The present prayer is obnoxious to a similar objection. It calls upon the court to say to the jury, "that upon the facts in this case the plaintiff is not precluded from recovering," unless they believe he has relinquished his claim. In other words, that the proof is sufficient to entitle him to a verdict, except upon the contingency stated. It takes from the jury their undoubted privilege, of deciding upon the truth of the evidence. In 2 *Gill*, 426 & '7, (*The Charleston Insurance and Trust Co. vs. Corner,*) the Court of Appeals say, "Doubtless the jury would have found these facts according to the testimony, but the sufficiency of evidence to satisfy a jury, or the circumstance, that it is all on one side, does not authorise the court to direct the jury, that it proves the fact. They have the power to refuse their credit, and no action of the court should control the exercise of their admitted right, to weigh the credibility of evidence."

The second prayer of the plaintiff takes the position, that he was entitled to a verdict if he "did assent to the assignment to Gilmor on the terms stated, as a surety in the judgment

assigned, and in order to authorize the bank to make the assignment, and compromise without discharging the plaintiff as a surety in the judgment," if the jury should believe he paid on the judgment the money claimed by him, which was never refunded.

Assenting to the arrangement with a view of authorising the bank to make the assignment and compromise, without releasing the plaintiff as surety, is not necessarily inconsistent with the idea, that in making the arrangement, the plaintiff did transfer all his interest and claim in the judgment, in such manner as to discharge Brien from all liability to him. The bank might have been unwilling to make the compromise without holding Grove ultimately bound, in the event of a failure on the part of Gilmor, to fulfil his engagements; and yet, for the purpose of effecting the arrangement even upon those terms, with a view of inducing Gilmor to take this judgment, Grove might very willingly have consented to the transfer of all his claim for interest. Especially when, by the terms, Gilmor was to release the plaintiff as surety, from a large claim, where the principal debtor was greatly embarrassed in his circumstances. And as there was evidence from which the jury might have drawn such a conclusion, the rejection of the prayer was not erroneous.

The third prayer of the plaintiff asked the court to instruct the jury, that if they should believe the plaintiff became a party to the compromise, and assented to the assignment of the judgment, he was not precluded from recovering, if they should also believe that he became a party to the compromise, and assented to the assignment, with the understanding and condition, that he was to hold Brien responsible to him for the money paid by the plaintiff, and not refunded.

The terms of the written agreement, signed by the judgment creditors, are such, that if Grove assented to them and the bank came into the arrangement also, it follows, as a necessary consequence, that all his claim on account of the judgment was transferred to Gilmor; unless the parties agreed to qualify or alter, in some manner, the terms of the compro-

mise. And what evidence is there of any such qualification or alteration? The fact that the promise alleged to have been made by Brien, was mentioned by Grove to Neill, (the agent of Gilmor,) cannot be considered as an understanding, that the interest paid by Grove, was not to be transferred, with the residue of the judgment, to Gilmor. It was at the very time when Grove assented to the compromise, by the terms of which, each entire judgment was to be assigned. If he intended to retain his claim for the interest, and it was the understanding between him and Gilmor's agent, that he should do so, notwithstanding the written agreement, there was no manner of use in saying that Brien had promised to pay, because the claim, in that condition of things, would have been good without the promise. The reference to this promise seems to confirm, and not to militate against, the intention of the parties, that Gilmor was to be entitled to the interest paid by Grove. He agreed to the compromise adopted by the other creditors, did not require Gilmor's agent to consent to any limitation or restriction of its terms, but simply spoke of Brien's promise to pay him. In addition to which, Gilmor's note for the interest prior to the date of the judgment, and Grove's receipt for the same, as "being the balance due on the settlement of the Washington County Bank's judgment, agreeably to the terms of compromise," strongly tend to prove that Gilmor was to have that judgment upon the same terms he was to take the others. And if so, then, notwithstanding Brien may have promised to pay the plaintiff the interest, such a promise was without consideration and void. Brien could not be bound to Gilmor and Grove, both, for the same sum. If, therefore, the promise was void for want of consideration, it must be treated as though it had never been made, so far as regards the responsibility of the appellee's intestate. And this being the only evidence relied upon to prove an understanding or condition, that Grove was to hold Brien bound to him for the interest; there is nothing on which the court were authorised to submit to the jury the question, whether the plaintiff became a party to the compro-

mise, and assented to the assignment, with the understanding and condition, that he was to hold Brien responsible to him for the money paid on the judgment by the plaintiff, and not refunded to him.    And as this constitutes a part of the plaintiff's third prayer, the same was properly rejected by the court.

Matters similar to those embraced in the first prayer of the defendant, have been spoken of in the previous part of this opinion, except that portion of it which relates to the state of the docket in regard to the judgment, the absence of any credits, and there being no stipulation or agreement that the payments should be credited.    We shall therefore confine ourselves, at present, to this part of the prayer.

When a surety pays part of a judgment, it gives him an equitable interest in the judgment to that extent, and the payment does not operate as a credit in favor of, or as a discharge to, the principal, as against the surety, unless with his consent.    So far from any evidence of such consent or intention in this case, Grove actually received from Gilmor, the interest which accrued prior to the date of the judgment.    A partial payment by a surety does not operate as an assignment to him, *pro tanto*, so as to enable him to exercise any control over the judgment or execution.    The original creditor having that power until he is fully satisfied.    2 *H. & G.*, 91, *Hollingsworth vs. Floyd*.    But the surety, possesses an inchoate equitable interest, to the extent of his payment, which may be released or transferred.    And there being no credit entered upon this judgment, and no evidence of any stipulation that the payments made by Grove should be so credited or entered, a transfer of the judgment, by the bank, with the consent and approbation of Grove, would pass all his interest in the, same.

We think the court were right in giving the instruction, that if the jury should believe the judgment of the bank against Brien and Grove was bargained and sold by the bank, with the assent of Grove, to Gilmor, according to the terms of the said compromise, and that at the time of such bargain and sale, the said judgment stood open upon the docket, that

neither of the sums paid to the bank by Grove had been credited upon the judgment; and if the jury should further believe that there was no stipulation or agreement between the parties to the arrangement, that the said payments should be so credited on the judgment, that then Gilmor or his representatives, were entitled to an assignment of the said judgment for the whole amount thereof, and without such credits being entered thereon. That Brien being liable under such circumstances, to Gilmor, for the whole of said judgment, a positive promise of Brien, to pay Grove any portion of the money paid by him would be void, and no action could be maintained upon such promise.

To discuss the positions taken in the second and third prayers of the defendant, would be a repetition of what has been previously said, and therefore we shall only express our approbation of the opinions given on those prayers, in the court below.

*Judgment affirmed.*