No. 10,057.

## ROOKER ET AL. *v.* BENSON, ADMINISTRATOR.

SUBROGATION.—*Principal and Surety.*—A surety, upon full payment of the debt, is subrogated to the remedies of the creditor, not only against the principal, but against others liable for the debt, and which he had before as well as at the time of the payment.

SAME.—*Privity.*—Subrogation does not depend on privity nor strict suretyship. It is the mode in which equity compels the ultimate discharge of a debt by him who in good conscience ought to pay it, and to relieve him whom none but the creditor could ask to pay it.

SAME.—*Mortgage.*—*Replevin Bail.*—*Vendor and Purchaser.*—*Judgment.*—*Payment.*—A., owning land subject to a mortgage made by him to C. to secure four promissory notes, one of which had been put into a judgment upon which V. had become replevin bail, conveyed the land to B., subject to the entire mortgage debt, B. assuming by parol to pay that debt so far as evidenced by the last three notes, but not the judgment stayed by V., this agreement being made with V.'s consent, and B. paid the three notes to C., and took an assignment thereof to himself for the purpose of keeping the mortgage lien alive, to the exclusion of V.'s claim to be subrogated to the mortgage security by reason of having been compelled to pay the judgment aforesaid.

*Held*, that B.'s purchase of the notes, as against V., was a payment, and V. is entitled to foreclose the mortgage for what he paid in satisfaction of the judgment. ELLIOTT, J., dissenting.

From the Hamilton Circuit Court.

*T. J. Kane, T. P. Davis, D. Moss, R. R. Stephenson* and *W. L. Christian*, for appellants.

*F. M. Trissal, W. Garver* and *R. Graham*, for appellee.

WOODS, J.—Action by the appellee, as administrator of the estate of Milford H. Vert, to foreclose a mortgage made by Oliver P. Rooker to Peter Cloud, to which a right of subrogation is claimed, because Vert, as surety for Rooker, had paid a part of the debt.

The court, by request of one of the defendants, found the facts specially, and stated conclusions of law, to which the appellants excepted. The facts as stated are substantially as follows:

On the 7th day of January, 1873, the defendant Oliver P. Rooker purchased of Peter Cloud the land described in the complaint, and for a part of the purchase-price made to Cloud his five promissory notes, payable respectively, in one, two, three, four and five years, with annual interest at the rate of ten per centum.

On the 17th day of January, 1874, Cloud conveyed said lands to Oliver P. Rooker and his wife America, taking from them a mortgage thereon to secure the payment of said notes.

The first of these notes was paid by said Oliver, but the second, not having been paid, was put in suit, and on the 5th day of March, 1875, a judgment was rendered thereon in favor of Cloud, against Oliver P. Rooker personally, in the sum of $1,660, upon which judgment the appellee's intestate, on the 25th day of March, 1875, became replevin bail for the stay of execution.

On the 7th day of March, 1876, Cloud obtained against his said grantees a judgment and decree of foreclosure for the respective sums due and to become due on the last three of said notes, and, upon an order of sale issued upon the decree, caused the mortgaged lands to be sold by the sheriff, on the 26th day of August, 1876, and became himself the purchaser, for the sum of $1,475, and received from the sheriff a certificate of purchase, which, together with the unsatisfied part of the judgment and decree of foreclosure, on the 4th day of September, 1876, he sold and assigned to Gustavus H. Voss.

Afterward, on the 21st day of December, 1876, Oliver P.

Rooker and wife conveyed said lands to the defendant James I. Rooker, by a deed of general warranty, reciting a consideration of $5,000, and containing an exception from the warranty in these words: "This deed is expressly accepted by the grantee, subject to any and all mortgage and judgment liens now existing against said property," and at the same time "James I. Rooker agreed to pay the said Peter Cloud debt or judgment evidenced by said last three promissory notes, as consideration for said conveyance;" but it was agreed between him and his grantors, in the presence of, and without objection from the decedent, Vert, that he was not to pay Vert's debt, evidenced by the second purchase-money note, which was then in judgment, and upon which Vert was replevin bail.

Afterward, on the 3d day of January, 1878, in consideration of the sum of $4,800, the amount of his demand, paid to Voss, by James I. Rooker, Voss sold and assigned the said certificate of purchase, and the judgment and decree of foreclosure, to the said James, who has paid delinquent and current taxes to the amount of $400, and has made repairs to the amount of $1,000, which were necessary for the protection and preservation of the mortgaged premises; and since payment of said sum of $4,800 to Voss, there has accrued interest thereon to this date to the amount of $1,920; on the 1st day of November, 1881, Vert was compelled to pay, and did pay, $2,200 in discharge of the judgment upon which he was bail.

The statement of the facts may be simplified by leaving out of view the foreclosure of the mortgage, the sale of the premises upon the decree, and the assignment of the certificate of sale and of the unsatisfied remainder of the decree to Voss, who, of course, acquired by the assignment no different nor better rights than Cloud had; so that the questions involved are the same as if James I. Rooker, after making his agreement with Oliver Rooker, had paid directly to Cloud the amount of the last three mortgage notes and had obtained from him an assignment instead of a cancellation of the same as paid and satisfied.

Restated then, the essential facts are these: Oliver P. Rooker and wife, being owners of land subject to a mortgage made to secure his four promissory notes to Cloud, one of which notes has been put into judgment and the judgment stayed by Vert as replevin bail, conveyed the land to James I. Rooker subject, by the terms of the deed, to all existing mortgage and judgment liens; and, at the same time, a parol agreement is made between the grantors and the grantee, Vert being present and not objecting, that said James I. Rooker shall pay as consideration for the land the portion of the mortgage debt evidenced by the last three notes, but shall not pay the judgment on which Vert is replevin bail; he does pay to Cloud the amount due upon the three notes, and takes an assignment thereof for the purpose of keeping the mortgage alive, in protection of his title, to the exclusion of the claim of Vert to be subrogated. The question is whether or not he can do this. The court is of the opinion that he can not.

Some stress has been put upon the recital in the finding that Vert was present and made no objection to the agreement between the Rookers; but we deem the fact unimportant. As we construe the agreement, there is nothing in it which was designed to or which can affect injuriously either the legal or equitable rights of Vert. On the contrary, it was indirectly for his benefit, though he was not a party to it, and he may well have acquiesced in its terms.

The recital in the deed, by which James I. Rooker agreed to accept the title, subject to the liens of existing mortgages and judgments, constitutes a written contract, the force of which can not be affected by the parol agreement which was made at the same time, even if such was the design. See *Johnson* v. *Thompson,* 129 Mass. 398; *Calkins* v. *Copley,* 27 Albany L. J. (Jan. 13th) 34.

It does not appear, however, that there was a purpose to modify the written stipulation; the parol agreement, as we construe it, having reference only to the personal liability

assumed by the grantee, which extends only to the last three notes, and not to the part of the mortgage debt which had been put into judgment and stayed by Vert. Notwithstanding the merger of this part of the debt in the judgment, it was still secured by the mortgage, and might have been included in the foreclosure, which was thereafter decreed, or, even after that, might have been made the basis of a second decree. *Hill* v. *Minor,* 79 Ind. 48. While, therefore, the judgment was not itself a lien on the land, both because mortgaged land can not be sold by virtue of an execution upon a judgment for the debt secured by the mortgage, code of 1852, section 640, R. S. 1881, section 1105, and because land owned jointly by husband and wife is not subject to sale on execution against either, yet the judgment was evidence *pro tanto* of the mortgage debt, subject to which the land was conveyed.

It is said, however, that the recital in the deed has the effect simply to release the covenant against incumbrances, in respect to the mortgage and judgment liens referred to. That it does more than this is demonstrable by a single suggestion. If not more, then the vendee who takes a grant subject to a mortgage debt made by his grantor, though his deed be without covenants, may procure an assignment of the debt, and, suing upon it, compel his grantor to remove the incumbrance, and to that extent get the land for nothing. Equity could not tolerate so gross an injustice; and while, in such a case, the grantee might keep the mortgage alive for the protection of his title, he could not be permitted to look beyond the land for payment of the mortgage debt.

In the case before us, it is clear that Oliver Rooker had an interest in the performance of the agreement, for thereby the land would be left subject only to so much of the mortgage debt as was evidenced by the judgment taken against him, which Vert had stayed, and being a party to the contract, he, of course, had a right of action for its breach, or to enforce it. *Devol* v. *McIntosh,* 23 Ind. 529; *Miller* v. *Billingsly,* 41 Ind. 489; *Tinkler* v. *Swaynie,* 71 Ind. 562. And under

the decision in *Bird* v. *Lanius,* 7 Ind. 615, followed in numerous later cases, many of which are cited in *Rodenbarger* v. *Bramblett,* 78 Ind. 213, it is clear that Cloud, the holder of the debt assumed, had a right to avail himself of the promise.

It follows that the parol agreement of James Rooker to pay three of the mortgage notes was not the sole consideration of the conveyance. The recital in the deed that it was accepted subject to the entire mortgage debt, for that is the effect of the recital, must be regarded as a part of the consideration, no less essential in law, and possibly no less valuable in fact, than the grantee's personal assumption of a part of the debt.

In this situation of the parties, Vert, upon payment of that portion of the debt for which he had bound himself, became entitled, by subrogation, to all liabilities and remedies, either direct or collateral, of which his creditor might have claimed the benefit.

" The right of subrogation to the remedies of the creditor on payment of the debt of the principal, is not restricted to the remedies which the creditor had as against the principal, but extends to all the remedies which he had against the principal and others liable for the debt. Nor is the right restricted to the right of the creditor as it exists at the time the surety pays the debt, but is as broad as the right of the creditor at the time of the execution of the contract." Baylies Sureties and Guarantors, 358. The text is amply supported by the decided cases. See *Talbot* v. *Wilkins,* 31 Ark. 411; *Butler* v. *Birkey,* 13 Ohio St. 514; *Grove* v. *Brien,* 1 Md. 438; *Hollingsworth* v. *Floyd,* 2 Har. & Gill, 87; *Swan* v. *Patterson,* 7 Md. 164; *Magee* v. *Leggett,* 48 Miss. 139; *Allison* v. *Sutherlin,* 50 Mo. 274; *Henry* v. *Compton,* 39 Tenn. 549; *Williams* v. *Tipton,* 24 Tenn. 66; *Lidderdale* v. *Robinson,* 12 Wheat. 594; 1 Lead. Cas. Eq. 134, 188; *Receivers, etc.,* v. *Wortendyke,* 27 N. J. Eq. 658; *Kyner* v. *Kyner,* 6 Watts, 221; *Bank, etc.,* v. *Potius,* 10 Watts, 148; *McCormick's Adm'r* v. *Irwin,* 35 Pa. St. 111; *Cheesebrough* v. *Millard* (1 Johns. Ch. 409), 7

Am. Dec. 494; *Hayes* v. *Ward* (4 Johns. Ch. 123), 8 Am. Dec. 554; *Rowlett* v. *Grieve's Syndics* (8 Martin, 483), 13 Am. Dec. 296, and notes; *Neely* v. *Jones* (16 W. Va. 625), 37 Am. Rep. 794; *Morrill* v. *Morrill* (53 Vt. 74), 38 Am. Rep. 659.

The right is the same, "even though such securities were acquired" (by the creditor) "without the knowledge of the surety, and after he became bound." Brandt Suretyship and Guaranty, p. 353, section 261.

The right "does not depend upon privity, nor is it confined to cases of strict suretyship. It is a mode which equity adopts to compel the ultimate discharge of the debt by him who in good conscience ought to pay it, and to relieve him whom none but the creditor could ask to pay." *McCormick* v. *Irwin, supra.* See *Kyner* v. *Kyner, supra.*

The doctrine that the entire demand of the creditor must be paid before the surety can claim the right of substitution is not in conflict with our conclusion. The transaction between James I. Rooker and Voss being held to be, as it was agreed it should be, a payment, the entire debt had been paid to the creditor, when this action was brought, and there remained, according to the strictest statement of the rule in this respect found in any of the cases, no obstacle to the granting of the relief prayed for.

It is, however, perhaps, not quite accurate to say that the surety has *no* right of subrogation until the creditor has been fully paid. In the case of *Grove* v. *Brien, supra,* is found the following statement, which seems to be well considered:

"When a surety pays part of a judgment, it gives him an equitable interest in the judgment to that extent, and the payment does not operate as a credit in favor of, or as a discharge to, the principal, as against the surety, unless with his consent. * * * A partial payment by a surety does not operate as an assignment to him, *pro tanto,* so as to enable him to exercise any control over the judgment or execution. The original creditor having that power until he is fully satisfied. 2 H. & G. 91, *Hollingsworth* v. *Floyd.* But the surety

Rooker *et al. v.* Benson, Administrator.

possesses an inchoate equitable interest, to the extent of his payment."

There is no inconsistency between this and the decisions in *Zook* v. *Clemmer*, 44 Ind. 15, and *Vert* v. *Voss*, 74 Ind. 565, which, by what is said on this point, mean that " subrogation can not be enforced until the whole debt is paid to the creditor," and are not to be construed as denying the existence of an inchoate right. "The equity springs up at the time the relation is entered into, and is consummated when the surety pays the debt." 1 Lead. Cases in Equity, 135; *Wayland* v. *Tucker*, 4 Grat. 267; Brandt, section 266. Where, as in this case, a mortgage debt is divided into distinct parts, and a surety upon one of the parts pays it, there seems to be no good reason why he may not at once be regarded as an assignee *pro tanto* of the security, though, of course, his right must be postponed to the rights of the creditor or his assignee, until the other parts of the debt shall have been paid.

In the case of *Rodenbarger* v. *Bramblett, supra,* which involved the right of a surety, who had been compelled to pay, to sue upon the promise of a third party, made to the principal debtor, to pay the debt, it was said: " The obligation of the defendants' promise to pay the note, resting, as it did, on an executed consideration, did not depend on an acceptance of the promise by the holder of the note, who was at liberty to accept it or not, as he chose; and, though he did not accept it, it was still a binding promise in favor of Witty, * and through him in favor of his surety, the appellee. The performance of the promise must have inured to the benefit of the appellee, by discharging his liability, and equity and good conscience concur in requiring that he be allowed to enforce the performance." And in the same case it was further said: " We should reach the same result, even if it were held that the appellee had only such right as was derived from the holder of the note, under the doctrine of subrogation to, or equitable assignment of, the creditor's rights and remedies."

Rooker *et al. v.* Benson, Administrator.

When it was said in this case that the creditor was at liberty to accept such promise of a third party or not, as he chose, it was not meant that he might reject or release it to the injury of a surety.    On the contrary, in *Hayes* v. *Ward, supra,* Chancellor Kent declares that " the creditor must do nothing to impair " a surety's right of substitution.

In the case now before us, therefore, whether Vert's right to insist upon the performance by James I. Rooker of his contract as made, be regarded as derived through his creditor Cloud, or through Oliver Rooker, his principal in the debt, the right was clearly his, and the court did not err in so finding.

Judgment affirmed.

### DISSENTING OPINION.

ELLIOTT, J.—I think that James I. Rooker acquired by his purchase of the Voss lien a right paramount to that of the appellee.

It is certain that the lien of Voss was, in his hands, paramount to any claim of appellee's intestate.    This is settled. *Vert* v. *Voss,* 74 Ind. 565; *Zook* v. *Clemmer,* 44 Ind. 15.

It is rudimental that an assignee is clothed with the rights of his assignor, unless he has done some act or assumed some position precluding him from taking all that his assignor can transfer.    I can see no reason why James I. Rooker should not enjoy the benefit of the right bought by him of Voss.

The deed which Rooker accepted did not preclude him from buying the Voss lien.    One who accepts a deed stipulating that the land is taken subject to encumbrance neither binds himself nor the land.    The effect, and the only effect, of such a provision is to exclude the encumbrance from the covenant of warranty, and to preclude the grantee from using them to the injury of the grantor.    Neither Vert nor the grantors in the deed to James I. Rooker acquired any other right under its provision than that of immunity from liability on the war-

ranty, except that the grantors acquired a right to prevent their grantee from enforcing the encumbrances against them.

The right, then, to subordinate the lien of Rooker to the claim of Vert can not be rested upon the deed. There is nothing in the deed transforming the lien from a superior into an inferior one.

The parol contract set forth in the special finding, as I read it, is that the entire consideration which James I. Rooker agreed to pay for the land was the discharge of the Voss lien. Not only so, but, by the express terms of the same contract, it was stipulated that he should not pay the claim of Vert. Can the grantors coerce, by direction or indirection, the performance of a thing they have agreed shall not be performed? Can they, in the face of this agreement, assert a right to compel their grantee to satisfy the Vert claim? If they can, then they are allowed to trample upon their own contract, and this can not be permitted without subverting plainest principles. If the grantors, the principals of Vert, had no right to enforce payment, then their surety can not, by his mere relationship, acquire a right to do what they could not.

It must not be forgotten that the Voss lien was a paramount one, and that James I. Rooker is not seeking to change its character, nor to alter the position occupied by the parties when he made his contract. On the contrary, it is claimed by his adversary, that, by mere force of the deed and the parol contract, Voss' lien was, the moment James I. Rooker bought it, wholly extinguished. This, it seems to me, can not be a just conclusion.

But the case is infinitely stronger when it is considered that Vert, tacitly at least, assented to the agreement excluding his claim from Rooker's liability, and carrying it out of the consideration which the former had agreed to pay for the land. Has Vert's representative any right to make Rooker pay more than he agreed to do for the land?

This is the effect of his demand; for, if it be sustained, Rooker must pay several thousand dollars more than the agree-

ment, to which Vert assented, provided he should pay, or else lose the property. Was there not "a standing by" which estops Vert's administrator from adding such a sum to that which he knew Rooker had agreed to pay as the price of the land? It is the natural, reasonable and legal implication that Rooker and his grantors, and Vert, *too,* understood that the land should not cost the former more than the Voss lien. If this be so, then upon what principle of law, equity or ethics, can Vert's representative be allowed to compel him to pay a much greater consideration? It is not an answer to say that the agreement did not make Rooker personally liable for the Vert claim, but left the land bound; for the just construction of the agreement is that the land should cost him no more than the amount of the Voss lien. If Vert's had been, at the time of the contract, the prior lien, there would be then plausibility in this argument; but it was not. Has he a right to now make his lien better than it was after having agreed that his claim should not be included in the consideration which Rooker undertook to pay, and thus increase the cost of the property in a large sum? Can he, after his agreement, after his standing by, assert not only a lien, but a stronger one, against a purchaser who bought upon the faith that the land should cost him the Voss claim and nothing more?

There was nothing in Rooker's position, so far as Vert is concerned, which prevented him from buying the Voss lien. A stipulation in a deed that it is subject to mortgage and judgment liens does not prevent the grantee from buying in a mortgage or judgment for the protection of his title. *Strong* v. *Converse,* 8 Allen, 557; *Brown* v. *Lapham,* 3 Cush. 551; *Popkin* v. *Bumstead,* 8 Mass. 491 (5 Am. Dec. 113); *Savage* v. *Hall,* 12 Gray, 363; *Sargeant* v. *Fuller,* 105 Mass. 119; *Fowler* v. *Fay,* 62 Ill. 375. If it is the intention of the parties to keep an encumbrance alive, and if equity will be done by keeping it on foot, merger will not be allowed to take place. *Howe* v. *Woodruff,* 12 Ind. 214; *Troost* v. *Davis,* 31 Ind. 34; *Sidener* v. *Pavey,* 77 Ind. 241. So far does this rule extend

that even the mortgagor may buy in the mortgage, and afterwards enforce it. *Smith* v. *Ostermeyer*, 68 Ind. 432.

For the reasons suggested, but not argued, I am constrained to dissent from the prevailing opinion.